378 S.E.2d 282

**Dale Winters RIGGLE, et al.**

v.

**ALLIED CHEMICAL CORP., et al.**

No. 18135.

Supreme Court of Appeals of
West Virginia.

Feb. 10, 1989.

Terence M. Gurley, Patrick S. Casey, Shrader, Stamp, Byrd, Byrum & Companion, Wheeling, for Griffith Brothers.

Paul T. Tucker, John E. Artimez, Jr., Wheeling, for Allied Chemical.

James G. Bordas, Linda M. Bordas, Bordas & Bordas, Wheeling, for Dale Winters Riggle.

NEELY, Justice:

Appellant, Griffith Brother's Contractors, Inc., was an independent contractor (now defunct), hired by appellee Allied Chemical Corporation, to repair the lining

of a chemical waste pond at Allied's plant in Marshall County. Appellee Dale Riggle was an employee of Griffith Brothers. On 1 April 1981, Mr. Riggle was draining the chemical waste in the pond with a pump supplied by Allied. While trying to fix a problem with the pump, Mr. Riggle was sprayed with the chemical waste and became permanently disabled with severe respiratory problems.

Mr. Riggle and his wife filed suit against both companies in February, 1982.[1] In Counts I and II of their complaint, plaintiffs sought $600,000 compensatory, and $5,000,000 punitive damages from Allied for its alleged negligence. In Count III of their complaint, plaintiffs asserted a *Mandolidis*[2] claim against Griffith Brothers for gross negligence in its alleged failure to advise Mr. Riggle that the waste pond's contents were dangerous, and sought $5,100,000 in damages from Griffith Brothers.

Allied answered the complaint and asserted a cross-claim against Griffith Brothers based on a written indemnity provision contained in their contract.[3] Griffith Brothers answered the cross-claim asserting that the indemnity provision was unconscionable and, therefore, unenforceable. The trial court dismissed plaintiffs' *Mandolidis* claim against Griffith Brothers but kept the latter as a party because of Allied's cross-claim based on the contractual indemnity provision. Plaintiffs did not object to the dismissal of their *Mandolidis* claim against Griffith Brothers.

Allied obtained leave of court to limit its indemnity cross-claim against Griffith Brothers to $500,000, the limit of the latter's insurance coverage. Allied then moved for partial summary judgment on the validity and enforceability of the indemnification provision.[4] The circuit court held that Allied could enforce the indemnity agreement for any judgment up to $500,000. Six days before trial, Griffith Brothers filed a motion to amend its answer to the indemnity cross-claim to assert fraud and estoppel as affirmative defenses. The court denied appellant's motion to amend.

At this point, unless the jury were to find Allied solely negligent, Allied had exposure only for a verdict in excess of $500,000. Although settlement discussions had taken place for several months before trial, no agreement was reached. However, after the first day of trial when the jury was selected, Allied reached a settlement agreement with plaintiffs. They informed Griffith Brothers' counsel of the settlement and the following day put the terms of the "Mary Carter" settlement agreement on the record before the Court.[5]

Allied agreed to remain a defendant in the suit, and actively to pursue its cross-claim against Griffith Brothers. In the

---

1. Plaintiffs originally filed this action in the Circuit Court of Marshall County, but defendants sought and were granted a change of venue to Wetzel County due to extensive pretrial publicity.

2. This appellation is derived from *Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978). In that case, we addressed *W.Va.Code,* 23–4–2 [1969] which provides immunity to employers by making the workers' compensation system the sole vehicle for compensating injured employees in most situations. The statute provides an exception, allowing an injured employee to sue his employer if his injury or death results from the "deliberate intention" of the employer. In *Mandolidis,* we provided an extensive definition of "deliberate intention." In *Cline v. Joy Mfg. Co.,* 172 W.Va. 769, 310 S.E.2d 835 (1983); *Kane v. Corning Glass Works,* 175 W.Va. 77, 331 S.E.2d 807 (1984); *Delp v. Itmann Coal Co.,* 176 W.Va. 252, 342 S.E.2d 219 (1986); *Miller v. Gibson,* 177

W.Va. 535, 355 S.E.2d 28 (1987); and *Dreyer v. Weirton Steel,* 178 W.Va. 540, 363 S.E.2d 127 (1986) we narrowed and refined the "deliberate intent" standard. A detailed discussion of this standard is not here required because no error is assigned regarding the court's dismissal of plaintiffs' *Mandolidis* claim.

3. The indemnity provision is quoted *infra,* in the text of section II of this opinion.

4. In this regard we find Allied was charitable; as shall be discussed, *infra,* the indemnity clause would have been valid for any liability, insured or otherwise.

5. As we pointed out in *State ex rel. Vapor Corp. v. Narick,* 173 W.Va. 770, 320 S.E.2d 345 (1984), the name for this kind of settlement agreement is derived from *Booth v. Mary Carter,* 202 So.2d 8 (Fla.Dist.Ct.App.1967), overruled 284 So.2d 385 (Fla.1973).

event of a defense verdict, Allied would give plaintiffs $125,000. In the event of a plaintiffs' verdict, Allied would pay plaintiffs $150,000, subject to a partial refund if the jury did not assess 100% fault to Allied. If Allied were not 100% at fault, and if the jury verdict were $350,000, but less than $500,000, the plaintiffs would refund Allied $50,000; if the verdict were $500,000 or more, the refund would be $75,000. Allied would pay plaintiffs everything it recovered in its crossclaim against Griffith Brothers and Allied and plaintiffs also agreed not to disclose the agreement to the jury. The trial court denied Griffith Brothers' subsequent motion to inform the jury of the settlement agreement and to realign the parties to position Allied and plaintiffs on the same side.

At trial, because of the "Mary Carter" agreement, Allied did not present the extensive defense it had originally planned. Griffith Brothers maintains that defense would have included expert testimony on Mr. Riggle's pre-existing condition from two pulmonary specialists, Dr. Bowles and Dr. Owens.[6] Both doctors had been deposed during pretrial discovery. After the settlement agreement was revealed and Allied did not call these experts, Griffith Brothers sought to use their depositions, or to get a continuance to secure their, or

similar, testimony. The trial court refused these motions because the depositions were discovery depositions that did not include the experts' qualifications, and because a continuance would prejudice the plaintiffs and Allied.

Another expert, Dr. Elizabeth Storey, had examined Mr. Riggle at his counsel's request. Because the doctor would be out of the country at the time of trial, the plaintiff took her deposition for trial use, and also made a videotape of the deposition. Plaintiffs' counsel decided to read the deposition into evidence rather than show the videotape to the jury. Griffith Brothers requested that the court require plaintiffs to show the videotape, which request the court denied.

■ The jury returned a verdict of $500,-000 for plaintiffs, and apportioned causation at 55 percent to Allied and 45 percent to Griffith Brothers.[7] Because plaintiffs' *Mandolidis* action against Griffith Brothers had been dismissed by the trial court, the entire judgment was assessed directly against Allied. The trial court later granted Allied judgment for $500,000 in its indemnity cross-claim against Griffith Brothers. Griffith Brothers appeals, arguing nine assignments of error. These assignments of error fall into three categories:

---

**6.** This evidence of Allied's apparently focused on minimizing the total amount of plaintiffs' damages, a goal no longer important to Allied after the "Mary Carter" agreement.

**7.** For the reader who does not regularly litigate cases of this type, perhaps the following explanation will be helpful. When an employee is injured by the joint negligence of his employer and another tortfeasor, the employer is insulated *entirely* by workers' compensation immunity unless it meets the wilful exception under *W.Va. Code*, 23-4-2 [1983]. Joint tortfeasors are jointly and severally liable; an injured plaintiff can sue one or both for the entire amount of his losses. Ordinarily, when two joint tortfeasors are involved, but plaintiff chooses to sue only one, the one sued can cross-claim against the one not sued. *Haynes v. City of Nitro,* 161 W.Va. 230, 240 S.E.2d 544 (1978). However, when one of the joint tortfeasors has workers' compensation immunity, that immunity applies both to the injured victim's cause of action and also to *any action for contribution* by the other joint tortfeasor. *Sydenstricker v. Unipunch Products,* 169 W.Va. 440, 288 S.E.2d 511 (1982).

The only exception to employer immunity occurs when an employee can sustain a *Mandolidis* cause of action, which has been made more difficult by the 1983 amendment to *W.Va.Code,* 23-4-2 and the narrowing of the "deliberate intent" standard referred to *supra* at note 2. Apportionment of fault under comparative, contributory negligence can be useful for apportioning fault among joint tortfeasors for purposes of claims for contribution *inter se;* but, in order for joint tortfeasors to obtain such apportionment the apportionment must be requested. *Sitzes v. Anchor Motor Freight, Inc.,* 169 W.Va. 698, 289 S.E.2d 679 (1982). However, comparative, contributory negligence does not in any way abrogate pre-existing principles of joint and several liability with regard to the plaintiff. In the case before us, were it not for the contractual indemnity clause between Griffith Brothers and Allied, Griffith Brothers would have been dismissed because of its workers' compensation immunity and the court's summary judgment on plaintiffs' *Mandolidis* cause of action.

those concerning (1) the "Mary Carter" settlement agreement; (2) the contractual indemnity provision; and, (3) evidentiary rulings of the trial court.

## I

Griffith Brothers argues that the court committed reversible error when he refused its request to disclose the "Mary Carter" settlement agreement to the jury. It also asserts the court erred by failing to grant its motion to realign the parties and by granting Allied's motion for judgment on its cross-claim. Griffith Brothers argues that because of the settlement, plaintiffs and Allied joined forces in an effort to prove the accident was the fault of Griffith Brothers and that the jury should have been made aware of the true loyalties of the parties. Griffith Brothers also argues that because Allied limited its exposure by agreement to $150,000, Griffith Brothers should have to pay Allied only $150,000 as indemnification.

Allied and plaintiffs respond that the settlement agreement by its terms was clearly not an overall settlement of plaintiffs' claim that would define Griffith Brothers' indemnity exposure, but rather an agreement that guaranteed plaintiffs a recovery in exchange for limiting Allied's exposure in the event of a plaintiffs' verdict in excess of $500,000. As for shifting trial tactics to the prejudice of Griffith Brothers, Allied and plaintiffs argue that they did nothing to prejudice Griffith Brothers unfairly.[8]

■ Last year, in *Reager v. Anderson,* 179 W.Va. 691, 371 S.E.2d 619 (1988), we examined the validity of a "Mary Carter"

settlement agreement. As we discussed in *State ex rel. Vapor Corp. v. Narick,* 173 W.Va. 770, 320 S.E.2d 345 (1984), such an agreement has four necessary attributes:

1. The agreeing defendants must remain in the action in the posture of defendants.

2. The agreement must be kept secret.

3. The agreeing defendants guarantee to the plaintiff a certain monetary recovery regardless of the outcome of the lawsuit.

4. The agreeing defendants' liability is decreased in direct proportion to the increase in the nonagreeing defendants' liability.

173 W.Va. at 772, 320 S.E.2d at 347–8.[9]

We pointed out in Syllabus Point 2 of *Vapor,* quoting syllabus point 1 of *Sanders v. Rosebaum Memorial Gardens,* 152 W.Va. 91, 159 S.E.2d 784 (1968), that although the law favors settlements, it also subjects them to judicial scrutiny:

The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy.

In *Reager,* we discussed the particular need to scrutinize "Mary Carter" agreements for fairness:

In determining the validity of "Mary Carter" settlement agreements, it is important to recognize that prompt disclosure of such agreements to the trial court and to opposing counsel is required because

---

**8.** Allied's limitation of its exposure to the plaintiffs to $500,000 had the effect of capping Griffith Brothers' exposure under the indemnity agreement to this same amount. Had Allied pursued a different course and actively adopted a strategy of a true Mary Carter defendant to enhance its share of recovery back from the plaintiff a different result might be reached. Where a party is given full express indemnification it is obliged to exercise a degree of good faith to its indemnitor.

**9.** We concluded that the agreement at issue in *Vapor* was not analogous to the traditional "Mary Carter" agreement primarily because the

settlement paid by the settling defendant was a fixed sum and, therefore, the agreement did not satisfy the fourth factor in the foregoing definition. Similarly, the agreement in this case does not really qualify as a "Mary Carter" agreement because Allied's liability was not reduced in direct proportion to any increase in appellant's liability. Whether a partial settlement agreement is, strictly speaking, a "Mary Carter" agreement, the analysis of the validity of the agreement and any resulting prejudice toward the non-settling defendant remains substantially the same.

such agreements tend to realign the loyalties of the parties and change their trial tactics from what normally would be expected. It is critical to the fair conduct of the trial to disclose promptly the settlement terms to the court and to opposing counsel so that the court can decide whether the agreement is valid, and if so, what measures should be taken to ensure that the nonsettling party(ies) will not be prejudiced. *Vapor*, 173 W.Va. at 773, 320 S.E.2d at 348.

179 W.Va. at 702, 371 S.E.2d at 630.

Therefore, when a trial court is confronted with a "Mary Carter" type settlement agreement, the court must first verify that the agreement does not contravene some law or public policy, and then determine whether the agreement should be disclosed to the jury to avoid unfair prejudice to the nonsettling defendant.

In this case, the settling parties promptly disclosed the agreement to the court and appellant. In *Reager*, presented with a similar assignment of error, we held that

... disclosure to the jury of the general nature of a "Mary Carter" settlement agreement is not required in each case; such disclosure lies within the sound discretion of the trial court. Where the "Mary Carter" agreement is not reached until after all or most of the evidence has been presented, and the settling defendant during closing argument and examination does not indicate to the jury a realignment of loyalties so as to prejudice the nonsettling defendant(s), it is within the sound discretion of the trial court to refuse to disclose the general nature of the "Mary Carter" agreement to the jury.

*Id.*

■ In the case before us, the agreement was reached after the jury was se-

lected but before any evidence was introduced. Under these circumstances, disclosure of the agreement to the jury is still subject to the sound discretion of the trial court. The determinative question is whether non-disclosure will unfairly prejudice any party, in particular the non-settling defendant.[10] This determination, in turn, depends primarily on whether the plaintiff or the settling defendant, during closing argument and examination, indicates to the jury a shift in loyalties so as to prejudice unfairly the non-settling defendant. In this case we find the trial court's refusal to disclose the agreement to the jury was not error.

Appellant argues that it was unfairly prejudiced because Allied did not put on expert evidence it had developed for the trial, and because the court did not grant appellant a continuance to develop evidence to replace that which Allied did not introduce. Appellant also argues that the settlement agreement caused plaintiffs and Allied to shift trial tactics in order to maximize appellant's liability. However, even before the settlement agreement, Allied and appellant were in an adversarial posture.

Allied needed to ensure that the jury assessed at least some of the liability against Griffith Brothers so that Allied could collect on its indemnity contract. Conversely, it was in appellant's interest to prove that the accident was completely Allied's fault so Allied would not be successful in their indemnity cross-claim against appellant. The plaintiffs desired, both before and after the agreement, to have the jury return a verdict as large as possible against both defendants. Therefore, in this case the potential harm of non-disclosure was relatively small because the basic

---

**10.** In *Reager*, we analogized the determination of the duty of the trial court to disclose such agreements to the court's duty to disclose dismissal of a party to the jury, which we set forth in syllabus point 2 of *Grillis v. Monongahela Power Co.*, 176 W.Va. 662, 346 S.E.2d 812 (1986):

In the absence of a particularized showing on the part of the remaining parties to a suit that one or more of them will suffer prejudice if

the trial court fails to advise the jury of the dismissal of [or, here, settlement by] one or more parties to the suit, or that another party has taken an unfair advantage of the dismissal [or settlement] in its presentation and argument of the case, there is no duty on the trial court to so instruct the jury regarding the dismissal of a party from the suit [or regarding the bias or prejudice of a settling party].

179 W.Va. at 702, 371 S.E.2d at 630.

alignment of the parties was not *significantly* altered by the agreement.

Furthermore, in reviewing the record, including the closing arguments of each party, we find that appellant did not suffer any *actual* harm from a change in trial tactics by Allied and plaintiffs. Plaintiffs' counsel argued that both defendants were significantly at fault. Allied's counsel admitted that Allied had a duty toward plaintiff but that Griffith Brothers also had such a duty and was at least equally at fault.[11] The only *actual* prejudice suffered by Griffith Brothers was that they were caught unprepared because they had apparently been relying on Allied's experts.

We note that it is generally good policy for trial courts to disclose "Mary Carter" agreements. *Vapor Corp., supra,* at note 5. Furthermore, disclosure of such agreements may be required when it is necessary to protect the non-settling defendant against unfair prejudice and when such disclosure will not be confusing to the jury. However, we can readily understand the trial court's hesitancy in this case to disclose the agreement to the jury, given the agreement's complicated, contingent terms. Had the court disclosed the terms of this agreement, and also informed the jury of the indemnity provision, the jury may well have deliberated for days trying to figure out the net effect of the agreement and indemnity provision.

Under the circumstances, it would have been difficult to disclose even the "general nature" of the agreement without confusing the jury and distracting them from their essential functions. It was essential for the jury to determine the extent of plaintiffs' damages, and to determine whether one or both defendants were negligent. The apportionment of any judgment among defendants was the proper province of the court. Accordingly, we find no error in the trial court's rulings regarding the settlement agreement.

II

Appellant raises three assignments of error concerning the contractual indemnity provision and Allied's cross-claim based on that provision: (1) The circuit court erred by denying appellant's motion to dismiss the cross-claim on the ground that the indemnity agreement is unconscionable and against public policy; (2) the circuit court erred by denying appellant's motion to inform the jury of the effect of the indemnity agreement, and; (3) the circuit court erred by denying appellant's motion for leave to amend its reply to the cross-claim to raise affirmative defenses of fraud and estoppel.

The pertinent portion of the indemnity provision reads:

> Seller [Griffith Brothers] agrees to protect, defend, indemnify, exonerate and hold Buyer [Allied Chemical] harmless from and against any and all suits, claims, liability, losses, liens and demands, fines, costs, criminal and civil penalties, causes of action or any other obligations arising out of or in any manner connected with, incidents involving bodily injury, death, property damage or any violation or alleged violation of any federal, state, provincial, or local law or regulation, except if any such incident, spill or pollution and associated clean-up results from the sole negligence of Buyer.

Appellant admits that this language comports with *W. Va. Code,* 55–8–14 [1975], which prohibits agreements indemnifying against *sole* negligence of the indemnitee. We held in syllabus point 1 of *Sellers v. Owens–Illinois Glass Co.,* 156 W.Va. 87, 191 S.E.2d 166 (1972):

> Contracts of indemnity against one's own negligence do not contravene public policy and are valid.

However, Appellant argues that maintaining a safe work place for subcontractors is so important a duty that a contractual shifting of responsibility through indemnity provisions like the one at issue here should be invalid. Although appellant is

---

11. Ironically, because of the indemnity provision, it would do Allied no good to argue actual percentages, such as "Griffith Brothers was 90% at fault," which argument under other circumstances (in another case) might well result in prejudice sufficient to require disclosure.

correct that the maintenance of a safe work place is a laudable public policy goal, we are not convinced that the correct method of implementing such a policy is to set aside established principles of contract law.

We find the indemnity provision perfectly proper; its object was to allocate risks for insurance purposes. Persons employing contractors are cognizant of workers' compensation immunity and principles of joint and several liability. Without a contract provision like the one at issue in this case, a person contracting for work on his premises could be hit with an entire judgment for damages when a worker is injured, even though the owner of the premises was but one percent negligent. Although it is true that under the indemnity provision appellant could be held responsible for all damages to a worker even though only one percent negligent, appellant was expected to buy adequate insurance to protect against this risk. Thus, contrary to appellant's contention, contractual allocations of risk similar to the one before us are favored; certainly they are not contrary to public policy.

Appellant maintains that the court should have revealed the indemnity agreement to the jury. It argues that the jury should have known that if it assessed even one percent of the fault to Griffith Brothers, then the latter would have to pay the entire judgment. Appellant argues that because a court, on request, must instruct the jury on the effect of finding a plaintiff fifty percent negligent, the court should have instructed the jury on the effect of the indemnity agreement here.

Under our comparative contributory negligence rule, originally announced in *Bradley v. Appalachian Power*, 163 W.Va. 332, 256 S.E.2d 879 (1979), a plaintiff at least fifty percent responsible for his or her own injuries is not entitled to recover damages. In *Adkins v. Whitten*, 171 W.Va. 106, 297 S.E.2d 881 (1982), we pointed out the problems that result from keeping this information from the jury, and held that a court must instruct the jury on this issue when requested to do so. However, we did not rule in *Adkins* that the jury should be instructed on how the court computes the amount of a plaintiffs' recovery from the relative percentages of negligence and the total amount of damages.

The problem with instructing the jury on the indemnity agreement at issue here is that such instruction would have been misleading without also instructing the jury on the settlement agreement and the insurance coverage of appellant. Comment to a jury concerning a party's insurance coverage usually constitutes reversible error. *Ellison v. Wood & Bush Co.*, 153 W.Va. 506, 170 S.E.2d 321 (1969). Therefore, we hold that the circuit court did not abuse his discretion when he denied appellant's motion to instruct the jury about the existence and effect of the indemnity provision.

### III

Appellant's remaining assignments of error deal with evidentiary rulings by the trial court, and the trial court's handling of a jury request for partial re-instruction. Appellant assigns as error the trial court's denial of appellant's motion to use the depositions of expert witnesses of Allied whom Allied decided not to call or to grant appellant a continuance to obtain its own experts.

As we stated in syllabus point 5 of *Grillis v. Monongahela Power Co.*, 176 W.Va. 662, 346 S.E.2d 812 (1986):

> The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion. Point 10, Syllabus, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955). Syllabus Point 5, *Casto v. Martin*, 159 W.Va. 761, 230 S.E.2d 722 (1976).

The trial court denied appellant's motion to use the doctors' depositions because the depositions were taken for discovery rather than trial purposes, and because the qualifications of the experts were neither stipulated nor addressed in the depositions themselves. Without being qualified, it is clear that the deposition testimo-

ny of these experts was inadmissible. *W.V.R.Evid.* 702. As for a continuance to allow appellant time to obtain admissible testimony of these or other doctors, once again we must point out that appellant had years to prepare its case, and had no right to rely on expert evidence developed by Allied to fight plaintiffs' claims.

Appellant had two possible courses of action to protect itself against a settlement between plaintiffs and Allied. Given the substantial evidence that appellant was at least partially at fault and the existence of the indemnity provision in appellant's contract with Allied, appellant would have been well advised to settle the case itself. Alternatively, if appellant wanted to fight plaintiffs' claim, it could have prepared its own case rather than relying on Allied's experts. Appellant chose neither course of action and has only itself to blame for the result.

■ Appellant also objects to the trial court's denial of its motion to dismiss the indemnity cross-claim or, in the alternative, to allow it to amend its reply to the cross-claim to allege estoppel and fraud. Essentially, appellant argues that Allied represented that the contents of the waste pond were not dangerous, and that such a misrepresentation should bar recovery by Allied under its indemnity claim.

Appellant made this motion on 23 April 1986, six days before the trial, without prior notice to other counsel or the court. In making this motion, counsel stated:

> This is really more in the nature of a clearing-up-the-record motion. I, frankly, don't expect you to grant it....

This case was filed in 1982, approximately four years before. There was ample time for appellant to seek leave to amend in a timely fashion. Under the circumstances, the court clearly did not abuse his discretion by denying this motion to amend pleadings a mere six days before trial.

■ Appellant next assigns as error the court's rulings with regard to use of the videotape deposition of Dr. Storey, a plaintiffs' witness who was out of the county, and whose deposition was taken for trial purposes. Plaintiffs' counsel decided to read the deposition into evidence rather than showing the two-hour videotape. Counsel for appellant insisted that the court require plaintiffs to show the videotape to the jury. The court denied appellant's motion stating that it had no authority to require plaintiff to show the videotape rather than to read the deposition into evidence. The court did not abuse his discretion by denying appellant's motion.[12]

■ Appellant next alleges that the trial court committed error in his response to a jury request for partial re-instruction. About one hour after the jury began deliberations, they sent a request to the judge for the state regulations concerning an employer's responsibilities to its workers. The court discussed the jury's request with counsel in chambers and appellant's counsel objected to re-instructing the jury on a single point of law that might highlight the liability of appellant. The court then called the jury back to the courtroom to inquire further about the request. The court determined that the jury wanted the court to re-read three instructions. The judge then asked if any party objected to the court's re-reading these three instructions. Counsel for appellant asked to approach the bench and objected to a partial re-instruction, insisting that the court re-read the entire charge to the jury, which he did. Appellant's counsel then moved for a mistrial, arguing that the trial court's reaction to appellant's counsel's request to read the entire charge to the jury, "especially his gestures and tone of voice, made it quite clear to the jury that they were being forced to hear all the instructions ... at the urging of counsel for Griffith Brothers and by no one else." Although we agree that the trial court could have been more tactful, we do not believe that appellant suffered any prejudice and, therefore, any error in the court's conduct was harmless. *See*, R. 61 of the *W.Va.R.Civ.P.* and *Jen-*

12. We point out that appellant did not attempt to avoid any prejudicial result of this alleged error by proffering the videotape in its case-in-chief although appellant's counsel originally suggested he might do so.

**570**

*nings v. Smith,* 165 W.Va. 791, 272 S.E.2d 229 (1980).

Finally, appellant argues that the cumulative impact of all the errors is sufficient to warrant reversal. Although we have recognized the validity of such an argument in criminal cases, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972); *State v. Wilson,* 157 W.Va. 566, 202 S.E.2d 828 (1974), we have not yet applied it in a civil case. Even if we were to recognize this argument as applicable in civil cases, because we have not found merit in any of appellant's assignments of error, the argument would still be unavailing to appellant in this case.

Accordingly, the judgment of the Circuit Court of Wetzel County is affirmed.

Affirmed.