Susan Frasa Coleman appeals from a summary judgment in favor of her former husband, Stephen L. Coleman. Ms. Coleman alleged that Dr. Coleman had negligently or wantonly infected her with a venereal disease during the course of their marriage. We affirm.
Susan Frasa Coleman and Stephen L. Coleman were married in 1971. On October 17, 1985, Dr. Coleman filed a complaint for divorce in the Circuit Court of Jefferson County, Alabama. Ms. Coleman filed an answer and counterclaim seeking a divorce on the ground of adultery. Dr. Coleman filed an answer to the counterclaim, admitting the acts of adultery but setting forth the defense of condonation.
On the day the case was set for trial, March 20, 1986, the parties entered into a settlement agreement, which was later incorporated into the final divorce judgment. The settlement agreement provided for, among other things, support of the parties' *Page 483 
two minor children and alimony for Ms. Coleman. The agreement also stated:
 "SIXTEENTH: MUTUAL RELEASE: Each party, in consideration of this Agreement, expressly releases the other party from any and all claims and demands, other than under the provisions of this Agreement, for the settlement of property rights."
After the final judgment of divorce was entered, on September 2, 1986, Susan Coleman filed this tort action, seeking damages for the alleged negligent or wanton transmission of a venereal disease, condylomata acuminatum, to her by her former husband. Dr. Coleman in his answer pleaded the affirmative defenses of estoppel, res judicata, release, and failure to file a compulsory counterclaim in the divorce action.
Dr. Coleman then moved for summary judgment based on the affirmative defenses in his answer, and he supported the motion by affidavit testimony, deposition testimony, the pleadings, his testimony from the prior divorce action, and the divorce judgment. Dr. Coleman subsequently filed a supplemental brief and in support of his motion attached copies of two letters between the parties' lawyers in the prior divorce case.
In further support of his motion, Dr. Coleman also attached subpoenas for records from five of his physicians that his former wife had requested in the divorce action. In particular, Ms. Coleman subpoenaed for trial Richard Holmes, of the Jefferson County Health Department's sexually transmitted disease program, and the following records: "Copies of any and all records and reports submitted in connection with the recording of a test for sexually transmitted disease on an individual namely: Stephen Coleman."
Ms. Coleman submitted two affidavits in opposition to Dr. Coleman's summary judgment motion: her own affidavit and an unsigned affidavit from her physician. She stated that she had not had sexual relations with any person other than Dr. Coleman. Ms. Coleman's physician stated that she had contracted a sexually transmitted disease and was receiving treatment for it. In a supplemental affidavit she stated that she had never raised the issue of transmission of the disease in the divorce action, and that she was not awarded any damages, expenses, or funds for treatment of the disease.
The trial court granted Dr. Coleman's motion for summary judgment. The trial court's well-reasoned opinion stated, in part:
 "In this action, the plaintiff charges the defendant with having infected her with a sexually transmitted disease during the course of their marriage and seeks damages as a proximate result thereof. The undisputed evidence clearly establishes that the plaintiff in this action had knowledge she had been infected with a venereal disease for a considerable period of time prior to her entering into the divorce settlement agreement.
 "The defendant now moves for summary judgment . . . on the grounds of res judicata, collateral estoppel, release, and compulsory counterclaims/res judicata.
". . . .
 "To counter the defendant's motion for summary judgment, the plaintiff argues there were no specific allegations or claims made in her counterclaim filed in the divorce action to recover damages for contraction of a venereal disease and, therefore, [that] such was not made an issue in the divorce action. She also contends there was no specific reference made in the divorce settlement agreement to a release of claims growing out of the contraction of a venereal disease.
". . . .
 "Mrs. Coleman knew of the venereal disease prior to entering into the divorce agreement. By her affidavit she also knew she had a cause of action against her husband for contracting the disease when she executed the settlement agreement. By her affidavit it is apparent she intended to file such an action after execution of the settlement agreement. The settlement agreement between the parties was a very detailed and lengthy settlement agreement of some eleven pages. *Page 484 
 "The opinion in the case of Weil v. Lammon, 503 So.2d 830 (Ala. 1987), states:
 " 'With the merger of law and equity, and given the liberal joinder allowed by the Alabama Rules of Civil Procedure, there is no reason why all known claims between spouses in a divorce action should not be settled in that litigation.'
 "This court fully agrees with that principle. To do otherwise would cause confusion and lead to fraud, potential ambush, a play on words within the settlement, and further potential for litigation. It is altogether reasonable that when a husband and wife enter into a lengthy written detailed settlement agreement that each would reasonably expect such an agreement to encompass a resolution of all claims known to exist between them as of that date and time.
 "If a party does not intend a settlement of all known claims, then the burden must be placed on such party to expressly reserve such claim from the settlement or to file and serve a separate cause of action on their spouse prior to the execution of such settlement agreement whereby the opposing spouse has notice that the settlement agreement is no more than a partial settlement of their disputes.
 "This court questions whether or not this claim is barred by the doctrine of res judicata since there is no right to a jury trial on this tort claim in a divorce action normally. If such claim is a mandatory counterclaim, I see no reason such claim could then not be severed and tried with a jury as to the tort claim."
This Court has recently held that a cause of action for the tortious transmission of a sexually transmitted disease — genital herpes — exists under the law of Alabama. See Bernerv. Caldwell, 543 So.2d 686 (Ala. 1989). We also noted in Berner
that while that case dealt with liability for the transmission of genital herpes, liability could also be imposed for the transmission of other sexually transmitted diseases. In Berner
the parties were two single adults; but in this case we are faced with a situation where a wife alleges that her former husband infected her with a sexually transmitted disease during the course of their marriage.
The present state of the law in Alabama concerning the issue of whether a wife is barred from bringing a tort action against her former husband for acts that occurred during their marriage is gleaned from a well-established line of cases. See Ex parteHarrington, 450 So.2d 99 (Ala. 1984); Jackson v. Hall,460 So.2d 1290 (Ala. 1984); Weil v. Lammon, 503 So.2d 830 (Ala. 1987); and Smith v. Smith, 530 So.2d 1389 (Ala. 1988).
In Ex parte Harrington, 450 So.2d 99 (Ala. 1984), we permitted a wife to file a tort action for assault and battery in one county, even though she had filed a divorce complaint in another county. In her tort action she alleged the same operative facts concerning the violence perpetrated on her by her former husband that she had alleged in her divorce action. The tort action was filed before a final judgment was entered in the divorce case, there was no settlement agreement of the parties in the case, and the issue of assault and battery had not been completely litigated.
In Jackson v. Hall, 460 So.2d 1290 (Ala. 1984), we did not allow a wife to pursue a tort action for assault and battery against her former husband. Prior to filing her tort action, she had entered into a settlement agreement in the divorce action in full and final settlement of "all property matters and other matters between the parties." In Jackson, we said:
 "The question here, however, is whether or not that action is barred under the material before the trial court on the summary judgment motion. The answer to this question depends upon the construction of the agreement of the parties and the effect of the divorce decree.
". . . .
 "This agreement was merged into the divorce decree and thus became a part of that decree, final and not subject to modification. Thus, the question of liability for a pre-existing cause of action for an *Page 485 
assault by one spouse against the other was decided in the divorce action."
460 So.2d at 1292 (citations omitted).
In Weil v. Lammon, 503 So.2d 830 (Ala. 1987), we did not allow a wife to pursue a tort action for fraud and misrepresentation against her former husband. We noted that the wife had asserted the alleged fraud and misrepresentation in support of her claim for alimony, and we held that the wife was barred by reason of the principle of res judicata. We expressly noted that Weil did not overrule Ex parte Harrington, but left open a field of operation where there had not been a settlement of all claims by the parties, or a claim fully litigated in a divorce case that had proceeded to a final judgment.
Finally, in Smith v. Smith, 530 So.2d 1389 (Ala. 1988), we did not allow a wife to pursue a tort action for assault and battery against her former husband. The tort action was filed before a final judgment in the divorce case was entered. However, the parties had entered into extensive settlement negotiations, and the trial judge was aware of the fact that the former husband was attempting to provide for his former wife's medical expenses. In light of the circumstances of the case, we held that the former wife was estopped from relitigating matters that were settled in the divorce action. 530 So.2d at 1391.
Those cases, read together, do not establish a general rule that a divorce action routinely precludes a former spouse from suing the other in tort based upon acts that occurred during the marriage. Rather, each case must be examined on its own facts and circumstances.
We have reviewed the record. A fair reading of the record reveals that Ms. Coleman was aware in September 1985 that she was infected with a sexually transmitted disease — before the divorce action was filed by Dr. Coleman on October 17, 1985. In preparation for the trial of her divorce action, she conducted medical discovery relating to whether Dr. Coleman had a venereal disease. Dr. Coleman testified in the divorce action: "[M]y Wife stated to me that she had a venereal disease. I have never had any venereal disease, either during my marriage to my wife or at any other time." Most importantly, there were also indications in correspondence between their attorneys that Ms. Coleman attempted to use the fact that she was infected with a venereal disease to increase her settlement award.
We agree with the trial court that to allow Ms. Coleman to use the fact that she may have been infected with a venereal disease by her husband as leverage in her divorce settlement, and then to permit her to bring a subsequent tort action, would seriously undermine the settlement of divorce actions in the future. To do so would, in the trial court's words "cause confusion and lead to fraud, potential ambush, [and] a play on words within the settlement."
In a divorce action the trial judge does not award damages compensating a party for injuries suffered during the course of the marriage. However, the trial judge can consider the conduct of the parties during the marriage when awarding alimony and dividing the marital property. Ala. Code 1975, § 30-5-52;Steiner v. Steiner, 254 Ala. 260, 48 So.2d 184 (1950).
We would also recognize, as the trial court properly did, that in situations such as this, a spouse is faced with several avenues of properly preserving a claim for damages: First, if the spouse does not intend a release of all known claims, he or she could expressly reserve a tort claim from the settlement and then subsequently sue in tort. Second, the divorce defendant could counterclaim with a demand for damages based upon any tort claims or the spouse plaintiff could also include a tort claim in the divorce case.[1] Because trial by *Page 486 
jury is not provided for in divorce actions in Alabama, the trial court could sever the claim for damages and set the severed case for a jury trial. Rule 21, A.R.Civ.P.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] See Maharam v. Maharam, 123 A.D.2d 165, 510 N.Y.S.2d 104
(1986). In that case, Ms. Maharam sued her husband for divorce and included a tort claim for compensatory and punitive damages, alleging that her husband had infected her with genital herpes. After ordering a divorce on the grounds of adultery, the trial judge severed and reserved for trial the tort cause of action.