399 S.E.2d 860

**Michael ACORD and Kathryn L. Acord**

v.

**CHRYSLER CORPORATION, a Corporation, and Earehart AMC/Jeep, Inc., d/b/a Earehart Dodge, a Corporation.**

No. 19498.

Supreme Court of Appeals of
West Virginia.

Nov. 29, 1990.

Clinton W. Smith, Rist & Associates, Beckley, for Michael Acord and Kathryn L. Acord.

Harry F. Bell, Jr., Kay, Casto, Chaney, Love & Wise, Charleston, for Chrysler Corp.

John Wooton, Wooton, Wooton & Fragile, Beckley, for Earehart AMC/Jeep Inc.

NEELY, Chief Justice:

This is an appeal from a summary judgment granted by the Circuit Court of Raleigh County in favor of Appellee Chrysler Corporation and Earehart AMC/Jeep. The Acords, who accepted an arbitration award concerning a defective Chrysler car they had purchased, were dissatisfied with Chrysler's performance of the arbitration award, and sought alternative legal remedies provided by West Virginia's "Lemon Law", *W. Va. Code*, 46A–6A–1 [1989], *et seq.* The circuit court refused the Acords any relief under the Lemon Law, and ordered them to accept the performance offered by Chrysler under the arbitration award.

On 31 March 1986, Michael Acord and Katherine L. Acord purchased a 1986 Dodge Charger from Earehart AMC/Jeep, Inc., d/b/a Earehart Dodge. On 7 December 1986, the car experienced serious overheating problems, which were traced to the catalytic converter. Earehart then repaired the car, at least temporarily. Unfortunately for everyone, on 28 March 1987, the overheating problem recurred, and the Acords returned the car to Earehart.

On 30 March 1987, Mrs. Acord mailed a letter to Chrysler requesting that the matter be handled by the customer Arbitration Board. The Customer Arbitration Board does not engage in the type of arbitration that most of us are used to. The Acords did not have the opportunity to choose any of the arbitrators, nor, apparently, did they have any opportunity to appear at the arbitration board's hearing. The arbitration award handed down by Chrysler's Customer Arbitration Board should most properly be viewed as a unilateral offer of settlement.

■ Of course, we like settlement agreements. In Syl.Pt. 1 of *Riggle v. Allied Chemical Bank*, 180 W.Va. 561, 378 S.E.2d 282 (1989), we stated:

" 'The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy.' Syllabus Point 1, *Sanders v. Roselawn Memorial Gardens*, 152 W.Va. 91, 159 S.E.2d 784 (1968)." Syllabus Point 2, *State ex rel. Vapor Corp. v. Narick*, 173 W.Va. 770, 320 S.E.2d 345 (1984).

■ On 15 April 1987, the Board ruled that Chrysler would have to provide the Acords with trade assistance for a "comparable 1987 Dodge Charger" with no penalty for the usage of the 1986 Charger. The decision also stated that the Acords would be expected to pay any "additional fees for taxes, tags or title." Mrs. Acord, the owner of the car, voluntarily accepted the Board's decision on 29 April 1987. However, the agreement Mrs. Acord signed contained the following language:

I understand that I am not bound by the decision of the Customer Satisfaction Board regarding my Case number 3587003OWV, reviewed on April 15, 1987, unless I accept, and if I am dissatisfied with the Board's decision *or the dealer's or Chrysler's eventual performance,* I may pursue other legal remedies if I choose, including the use of small claims court. Whether or not I accept the Board's decision, however, its decision is admissable in any subsequent legal proceeding concerning the dispute. [Emphasis added].

I also understand that if I accept the Board's decision, the Chrysler Corporation dealer involved and the Chrysler Corporation will be bound by the Board's decision.

(Hauser Deposition, Exhibit 1.) It appears that the arbitration award or settlement agreement that Mrs. Acord signed was designed more to be signed than to be binding. It is very favorable to the customer, allowing the customer to pursue alternative legal remedies if she is not satisfied with the eventual performance of the agreement. Who would not sign such a document?

The agreement explicitly provides that Mrs. Acord can pursue other legal remedies if she is dissatisfied with Chrysler's or the dealer's eventual performance. Mrs. Acord is clearly dissatisfied with Chrysler's and Earehart's performance pursuant to the arbitration agreement. Thus, Mrs. Acord can abandon the arbitration remedy and pursue alternative legal remedies. In Syl.Pt. 1 of *Barrett v. Raleigh Coal Company*, 51 W.Va. 416, 41 S.E. 220 (1902), we stated the proposition that one who bargains for "satisfaction" in a contract, has a right to insist on "satisfaction":

> Where by a contract brick are to be made of certain kind and character "to the satisfaction of the general superintendent of said company or his authorized representative," the right of rejection by the superintendent is absolute, and *his reasons cannot be investigated, if in good faith*, that is[,] not fraudulent. [Emphasis added].

*See also, Blue v. Hazel–Atlas Glass Company*, 106 W.Va. 642, 649, 147 S.E. 22, 25 (1929). The requirement of good faith almost goes without saying. For UCC matters, the requirement that all dealings be in good faith is embodied in UCC 1–203, *W.Va.Code*, 46–1–203 [1963], and should be equally applicable to settlement agreements. It is worth noting, however, that "good faith" efforts on Chrysler's or Earehart's part will not constitute "satisfaction." If the defendants could show that Mrs. Acord did not act in good faith, but was simply playing games with Chrysler for her own benefit, then she would be limited to the trade-in offered by the Arbitration Board. However, unless the record

clearly discloses a lack of "good faith" on Mrs. Acord's part, we see no reason why she should not be allowed to pursue other legal remedies as the arbitration award permits her to do if she is dissatisfied.

The decision of the Arbitration Board specifically stated that Chrysler had 30 days in which to comply with the order. After accepting the arbitration award, the Acords entered into negotiations with Earehart concerning a replacement vehicle. The Acords did not, however, want a comparable 1987 Dodge Charger. They, understandably, sought something different. They wanted a Dodge Colt Vista station wagon, which happened to be somewhat more expensive than the 1987 replacement Dodge Charger would have been.

The Acords are aggrieved because they feel that they have been "jerked around" by Chrysler. When Mr. and Mrs. Acord first talked to the dealer, Earehart, about trading up to the Vista, Earehart led the Acords to believe that the out-of-pocket cash required to effect the trade would be fairly low. When the dealer checked with Chrysler, however, Chrysler would not approve the dealer's generous offer. Perhaps the dealer was wrong to be generous with Chrysler's money, but the fact remains that the Acords had their expectations raised by the dealer, and then disappointed by Chrysler. In normal human affairs, this is usually just cause for dissatisfaction, and it is satisfaction alone for which Mrs. Acord bargained.

Mrs. Acord also feels that the process of getting a replacement car took too long. Chrysler, on the other hand, claims Mrs. Acord is at fault for the delay. Chrysler states that it was not until Friday, 29 May 1987, that Mrs. Acord told Chrysler that she definitely wanted the Vista station wagon. If that is true, then Chrysler would have been left only about two days to get her the car. However, the record shows that Mrs. Acord spoke frequently with people at the dealership, as well as with a member of the Arbitration Board, about the trade she wanted to make.[1] If Mrs. Acord delayed in telling Chrysler in no uncertain terms that she wanted the

---

1. Mrs. Acord claims that she spoke with Mr.     Hauser, a Chrysler official, over the phone on

Vista station wagon, the delay may be attributable to her negotiations with the dealer and Chrysler about the cost. It seems that she wanted to get Chrysler to come closer to the deal the dealer had originally proposed to her. The record does not show clearly whether Chrysler or the dealer gave Mrs. Acord a "runaround" in her attempt to obtain a replacement vehicle. However, such a showing is not necessary. The Acords are dissatisfied.

An argument can be made that the Acords' dissatisfaction is not entirely reasonable, but under the agreement they signed, and our law regarding such agreements, their dissatisfaction does not need to be entirely reasonable; it needs only to be in good faith. The record makes no clear showing that the Acords lacked good faith in their dealings with Chrysler and Earehart. The fact that Mrs. Acord is indisputably dissatisfied with Chrysler's performance of the arbitration award allows her to pursue her alternative legal remedies, including those afforded by West Virginia's "Lemon Law," *W.Va.Code*, 46A–6A–1 [1989], *et seq.*

Thus, we hold that the circuit court erred in granting Chrysler's and Earehart's motions for summary judgment. Mrs. Acord and her husband may pursue whatever legal remedies the law provides. However, the circuit court correctly denied the Acords' motion for summary judgment. There are genuine issues of fact bearing on Mr. and Mrs. Acord's claim under the Lemon Law.

Accordingly, the judgment of the Circuit Court of Raleigh County is reversed in part, affirmed in part, and the case is remanded for further proceedings consistent with this opinion.

Reversed in part; Affirmed in part; and Remanded.

two occasions in May 1987, and discussed a vehicle trade. The first call occurred around the 14th, and the second occurred around the 19th. She claims that she did not specifically state that she wanted the Vista station wagon in these calls because she assumed that the dealer had mentioned the specific car to Chrysler. At least one of the calls was placed by the dealership for Mrs. Acord.