**Elizabeth L. OVERBERG,
Plaintiff–Appellant,**

v.

**Larry LUSBY, Defendant–Appellee.**

No. 90–5237.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 14, 1990.

Decided Dec. 21, 1990.

Frank V. Benton, IV (argued), Fort Thomas, Ky., for plaintiff-appellant.

Kenneth G. Hawley, Crabbe, Brown, Jones, Potts & Schmidt, Cincinnati, Ohio, Larry C. West (argued), Ware, Bryson, West, Bartlett, Kummer & Knapmeyer, Edgewood, Ky., for defendant-appellee.

Before KRUPANSKY, GUY and SUHRHEINRICH, Circuit Judges.

PER CURIAM.

In this diversity personal injury action, plaintiff, Elizabeth Overberg, appeals from a grant of summary judgment to the defendant, Larry Lusby. 727 F.Supp. 1091 (E.D. Ky.1990). Overberg claimed that during her marriage to Lusby, he intentionally or negligently transmitted to her a sexual disease—condyloma—which resulted in her having to undergo a hysterectomy. Lusby's motion for summary judgment was predicated upon a release executed by Overberg as part of the separation agreement, which was incorporated into their divorce decree.

Upon review of the record, we conclude that Judge Bertelsman properly granted summary judgment, and we affirm on the

basis of his written opinion that carefully analyzed and resolved all of the issues before us on appeal. We write briefly only for additional clarification.

Elizabeth Overberg and Larry Lusby were married on December 14, 1985. Their marriage was a brief and apparently stormy one, resulting in a separation in December 1986. Their divorce became final in September 1987. During their separation, specifically on May 15, 1987, Overberg learned from her gynecologist that she had condyloma and would have to have a hysterectomy. The hysterectomy was performed in July 1987. It was Overberg's contention then and now that the condyloma was transmitted to her by Lusby.

Two weeks after her hysterectomy, Overberg and Lusby, in connection with their pending action for divorce, executed a separation agreement. This agreement provided, *inter alia*, that "each party hereby releases and discharges the other from all obligations of support, and from all other claims, rights and duties arising or growing out of said marital relationship."

▮▮▮ Overberg argues that since the separation agreement primarily concerned itself with property matters, it was not intended to cover a possible personal injury tort claim. We disagree. Although the parties could not legally effectuate their divorce without formal court action, they could resolve all other matters relating to the dissolution of their marriage by agreement. It is clear to us that the separation agreement that they executed was intended to tie up all loose ends and resolve all of the claims or disputes that might arise from the marriage relationship. We also note that both parties were represented by and consulted with counsel. In fact, Lusby's affidavit, which was filed in the district court and is part of the record before us, states:

1. That around May 15, 1987, Elizabeth Lusby first complained that Affiant had infected her with a sexually transmitted disease which was going to cause her to have a hysterectomy. She continued to complain and, in fact, had the hysterectomy prior to the hearing before Commissioner Pat Walsh, Campbell Circuit Court, on July 31, 1987. On that date, I appeared with my attorney Patrick Hickey and she appeared with her attorney.

2. Elizabeth Lusby complained to Judge Walsh about the sexually transmitted disease and hysterectomy alleged to have been caused by me.

3. An adjournment was held and the parties each met with their own attorneys in separate rooms. All parties came back to Court and the Agreement was signed.

The affidavit stands unrefuted in the record. We must conclude, as did the district judge, that the issue of the sexually transmitted disease (STD) was a matter within the contemplation of the parties at the time the settlement agreement was executed. Apparently, however, although Overberg knew the separation agreement provided nothing relative to the STD, she did not know, nor did her attorney inform her, that one spouse could sue another in tort as a result of an STD contracted during the marriage.[1] Judge Bertelsman resolved this issue by concluding that plaintiff, a nurse by profession, was fully knowledgeable about her medical condition and that she had a duty to inquire about her legal rights in that regard. In light of the circumstances surrounding the execution of the separation agreement, we agree. The agreement was actually executed in court with attorneys for both parties present. Plaintiff had the opportunity to obtain answers to any legal questions she may have had. Although under some circumstances courts will provide relief insofar as contractual obligations are concerned when there has been a mutual mistake of fact, here we have a unilateral

---

[1]. The parties do not discuss the liability issue and we pass no judgment on the viability of plaintiff's tort theory.

mistake as to the law. Plaintiff was fully apprised as to the facts.

Although the parties have not directed the court to any similar cases, our research has revealed one very recent case, remarkably similar to this one, which supports our holding. *Coleman v. Coleman*, 566 So.2d 482 (Ala.1990), involved a suit by a woman against her former husband for wantonly or negligently inflicting her with a venereal disease, condylomata acuminatum. At the time the divorce action was pending between the Colemans, plaintiff was aware she had the disease and that her husband transmitted the disease to her. The day before the divorce action was set for trial, the parties entered into a settlement agreement, which was later incorporated into the final divorce decree as was done in the case at bar.

The settlement agreement contained a general release clause, not unlike the one in this case. It read: "SIXTEENTH: MUTUAL RELEASE: Each party, in consideration of this Agreement, expressly releases the other party from any and all claims and demands, other than under the provisions of the Agreement, for the settlement of property rights." *Coleman*, 566 So.2d at 483. After the divorce was final, Susan Coleman instituted her tort action against her former husband. In his response, Stephen Coleman pleaded the defenses of estoppel, res judicata, and release—very similar to the defenses pleaded here. The trial judge granted a summary judgment to the former husband.

On appeal, the Alabama Supreme Court affirmed. The court rejected the argument that the divorce action itself and the final decree somehow barred the plaintiff's claim, but it did give effect to the release. The court stated:

> We agree with the trial court that to allow Ms. Coleman ... to bring a subsequent tort action, would seriously undermine the settlement of divorce actions in the future. To do so would, in the trial court's words "cause confusion and lead

to fraud, potential ambush, [and] a play on words within the settlement."

. . . .

> We would also recognize, as the trial court properly did, that in situations such as this, a spouse is faced with several avenues of properly preserving a claim for damages: First, if the spouse does not intend a release of all known claims, he or she could expressly reserve a tort claim from the settlement and then subsequently sue in tort. Second, the divorce defendant could counterclaim with a demand for damages based upon any tort claims or the spouse plaintiff could also include a tort claim in the divorce case.

*Coleman*, 566 So.2d at 485 (footnote omitted).

AFFIRMED.