RALPH SELLERS, *et al.*

*v.*

OWENS-ILLINOIS GLASS COMPANY, *a corporation,* TIMOTHY McCARTHY, WILLIAM F. HYLAND, TIMOTHY McCARTHY CONSTRUCTION COMPANY, INC., *a corporation,* EARP & SHRIVER, INC., *etc., et al.*

(No. 12907)

Submitted April 25, 1972.      Decided September 6, 1972.

*Herschel Rose, James D. Nash, Jr.,* for appellants.

*Steptoe & Johnson, Willis O. Shay,* for appellees.

KESSEL, JUDGE:

This case is before the Court upon an appeal from a final judgment of the Circuit Court of Marion County which, by an order entered on April 24, 1969, rendered judgment in favor of Earp & Shriver, Inc., the appellee, and against Timothy McCarthy Construction Company, Inc., the appellant, upon the cross-claims of the appellant asserted in each of six cases which had been consolidated for trial. The issue raised by the cross-claims and presented for decision in this case is whether Earp & Shriver, Inc., hereinafter referred to in this opinion as Earp or as the appellee, is required to indemnify Timothy McCarthy Construction Company, Inc., hereinafter referred to in this opinion as McCarthy or as the appellant, under the terms of an indemnity agreement for the amounts which McCarthy was found liable to the plaintiffs for damages to their real estate.

The plaintiffs in these consolidated civil actions are the owners of six separate parcels of improved real estate adjacent to the northwestern side of Speedway, a public street in Fairmont, Marion County, West Virginia. On the southeastern side of Speedway, opposite the parcels of land owned by the plaintiffs, Timothy McCarthy and William F. Hyland owned a parcel of land, fronting 607.58 feet, more or less, on said street and containing 145,981.33 square feet. McCarthy and Hyland, as

individuals, entered into "an agreement and lease" with Owens-Illinois Glass Company for the construction of a warehouse on the parcel of real estate owned by them. The warehouse was to be constructed according to the preliminary plans and specifications attached to and made a part of the lease agreement. McCarthy and Hyland, as individuals, engaged the appellant, McCarthy, as the general contractor for the construction of the warehouse. The appellant, McCarthy, entered into a written subcontract with Earp, the appellee, for the grading and excavation connected with the erection of the warehouse. This written agreement between McCarthy and Earp contained the following provision:

> "Subcontractor shall indemnify Contractor against all claims for damages arising from accidents to persons or property occasioned by the Subcontractor, his agents or employees: and Subcontractor shall defend all suits brought against the Contractor on account of any such accidents and shall reimburse Contractor for any expense including reasonable attorneys' fees sustained by Contractor by reason of such accidents."

The excavation work was commenced by Earp on August 31, 1964. The plaintiffs alleged in their complaints that, as a result of the negligent excavation of the real estate, the plaintiffs were deprived of the natural lateral support to their real estate which resulted in damages to the real estate and the improvements situated thereon.

In each of these six civil actions, McCarthy asserted a cross-claim against the defendant Earp, alleging that Earp was liable to McCarthy under the indemnity provision, previously quoted in this opinion, of the excavation and grading subcontract, for any sums which McCarthy might be found liable to pay the plaintiffs plus costs and expenses, including reasonable attorneys' fees.

Named as defendants in each of the six civil actions instituted by the plaintiffs on June 7, 1966, were Owens-Illinois Glass Company, a corporation, to whom the

warehouse was leased with an option to purchase; Timothy McCarthy and William F. Hyland, the owners for whom the warehouse was constructed; Timothy McCarthy Construction Company, Inc., the general contractor and the appellant in this case; Earp & Shriver, Inc., the excavating subcontractor and the appellee in this case; and New England Mutual Life Insurance Company, a corporation, which financed the project by a construction loan which was secured by a lien on the parcel of real estate.

Timothy McCarthy and William F. Hyland, the owners of the real estate, were dismissed as defendants for the reason that they were nonresidents of the State of West Virginia and the court had no jurisdiction over their persons. New England Mutual Life Insurance Company, a corporation, was awarded judgment on the pleadings in its favor and was dismissed as a defendant.

By an order entered on November 20, 1967, the trial court ordered that the six cases be consolidated for trial and that they first be tried on the issue of liability. At the conclusion of the evidence in behalf of the plaintiffs, the court directed a verdict in favor of the defendant Owens-Illinois Glass Company. Upon the trial of the case, the jury returned verdicts in favor of each of the plaintiffs, and against McCarthy, and found Earp not guilty. No appeal was taken by McCarthy from the judgment of the trial court entered upon the jury verdicts.

Thereafter, the claims of the plaintiffs for damages in five of the cases were settled and paid by McCarthy. The sixth case was tried with a jury on the issue of damages alone, and the amount of the resulting verdict for the plaintiff was paid by McCarthy.

On the 24th day of April, 1969, the trial court, by an order entered on that date, dismissed the cross-claim upon the ground that McCarthy was not entitled to

indemnification from Earp. In its opinion, dated April 1, 1969, and made a part of the record, the trial court stated as follows: "* * * that in order to be in a position to collect indemnity from another for one's own negligence, such a contract must be clear and unambiguous, and without a doubt to the effect that the parties agree to such an arrangement. I find that the agreement in this case falls far short of meeting this requirement, and so fails to meet this test."

Under the terms of the subcontract between Earp and McCarthy for the excavation of the real estate, Earp agreed to perform the contract according to plans and specifications submitted to Earp by McCarthy. The evidence shows that Earp executed the contract and performed all the excavation and earth moving on the building site. Counsel for the appellant concede in their brief that Earp performed the excavation contract in a proper and workmanlike manner and in strict accordance with the plans and specifications, with the exception of certain changes which were dictated by the general contractor.

The record in this case discloses that during the excavation of the warehouse site, McCarthy had knowledge of the fact that the excavation was causing the land to slide. The evidence further shows that, after an actual rotational slide failure was noticed on the building site, McCarthy employed experts from the Pittsburgh Testing Laboratory, who inspected the area and recommended correctional measures. McCarthy did not adopt the recommendations of the experts nor did McCarthy take any other steps to prevent further damage to the plaintiffs' properties; nor did McCarthy tell or order Earp to proceed in any way other than according to the original plans and specifications.

Counsel for the appellant contend that, although the verdicts of the jury absolved Earp from any negligence in the performance of the excavation contract, Earp was the

"active agency" which precipitated the plaintiffs' damages and should be required to reimburse McCarthy. Counsel for the appellant further maintain that the indemnity agreement between McCarthy and Earp was not restricted to incidents where "accidents" were intentionally caused by the subcontractor or where the "accidents" were negligently caused by the subcontractor. Counsel for the appellant contend that the indemnity agreement made Earp liable even though McCarthy was the negligent party, for the reason that plaintiffs' damages were caused by the acts of Earp in excavating under the terms of the subcontract. Counsel for appellant agree that Earp was not negligent in performing the excavation subcontract.

Counsel for the appellee take the position that Earp assumed liability for "accidents to persons or property occasioned by" Earp and did not agree to indemnify McCarthy for acts which resulted from McCarthy's own negligence.

The question before the Court in this case is whether the language in the contract known as the indemnifying paragraph is sufficiently broad to require the subcontractor to reimburse the contractor for the judgments, costs, attorneys' fees, and other expenses sustained by him in the consolidated suits by the landowners.

Contracts of indemnity against one's own negligence do not contravene public policy and are valid in West Virginia. *Borderland Coal Company v. Norfolk & Western Railway Company,* 87 W.Va. 339, 104 S.E. 624.

The rules governing the requisites and validity of contracts generally apply to contracts of indemnity and the language of such a contract must clearly and definitely show an intention to indemnify against a certain loss or liability; otherwise it is not a contract of indemnity. In construing a contract of indemnity and determining the rights and liabilities of the parties thereunder, the primary

purpose is to ascertain and give effect to the intention of the parties. 42 C.J.S., *Indemnity*, Sections 4, 5 and 8, pages 567-574. See Annot., 175 A.L.R., pages 29-32.

A general rule relating to the construction of indemnity agreements is stated in *Rice v. Pennsylvania R. Co.*, 202 F.2d 861 (2nd Cir.), as follows: "[G]enerally * * * contracts will not be construed to indemnify a person against his own negligence unless such contention is expressed in unequivocal terms, * * *". See *Daniel Construction Company, Inc. v. Welch Contracting Corporation*, 335 F. Supp. 303 (E.D.Va.); *United States Fidelity and Guaranty Company v. Mason and Dulion Company, Inc.*, 274 Ala. 202, 145 So. 2d 711; *Vinnell Company v. Pacific Electric Railway Company*, 52 Cal. 2d 411, 340 P.2d 604; Annot., 175 A.L.R., pages 29-30.

This Court, in *Bowlby-Harmon Lumber Company v. Commodore Services, Inc.*, 144 W.Va. 239, 248, 107 S.E.2d 602, 607, in considering the provisions of a written instrument made the following statement: "Moreover, to relieve a party from liability for his own negligence by contract, language to that effect must be clear and definite." We believe that the rule stated in the *Bowlby-Harmon* case is a well-established one. While other courts have frequently employed such phrases as "clear and unequivocal" or "clear and explicit," we do not believe that the *Bowlby-Harmon* case is a departure from the general rule. See *Eastern Gas and Fuel Associates v. Midwest-Raleigh, Inc.*, 374 F.2d 451 (4th Cir.); *Ocean Accident & Guarantee Corp. v. Jansen*, 203 F.2d 682 (8th Cir.); *Southern Bell Telephone & Telegraph Co. v. Mayor and Board of Aldermen*, 74 F.2d 983 (5th Cir.); *Rice v. Pennsylvania R. Co., supra.*

Following this rule of interpretation, we must consider the language of the indemnity provision, including the facts and the surrounding circumstances. *Southern Pac. Co. v. Fellows*, 22 Cal. App. 2d 87, 71 P.2d 75; *Westinghouse Electric Elevator Co. v. LaSalle Monroe Bldg. Corp.*, 326

Ill. App. 598, 63 N.E.2d 411. The indemnifying clause of the contract provides:

> "Subcontractor shall indemnify Contractor against all claims for damages arising from accidents to persons or property occasioned by the Subcontractor, his agents or employees: * * *"

In the instant case, Earp was furnished with excavation plans and specifications by McCarthy, and it is admitted by McCarthy that the excavation work done by Earp was performed according to the plans and specifications. McCarthy further concedes that Earp was not negligent in any manner whatsoever. This is further buttressed by the jury verdicts which absolved Earp of any negligence. The damages were caused by Earp executing his contract with McCarthy within its precise and definite terms. Could we then say that the damages were occasioned by Earp or that it was contemplated by the parties to the indemnity agreement when it was executed that it should cover and extend to such a circumstance? We believe not. The language of the indemnity agreement is not sufficiently clear and definite to require Earp to indemnify the indemnitee, McCarthy, for its sole negligence.

We have considered the cases relied upon by the appellant and find that they are distinguishable from the instant case. In *Gay v. S. N. Nielsen Company,* 18 Ill. App. 2d 368, 152 N.E.2d 468, a case heavily relied upon by counsel for the appellant, the language of the indemnity agreement construed by the court was infinitely broader than the language of the indemnity agreement in the instant case. In the *Nielsen* case the indemnity agreement provided that the subcontractor would indemnify the owner and contractor and each of them against any liability, loss or damage suffered by anyone arising through the negligence of the subcontractor or his employees, agents or servants. The factual situation involved in the *Nielsen* case, however, further distinguishes it from the case presented to this Court for decision. The plaintiffs in that case filed a suit against the city, the contractor and the subcontractor for

damages done to their two dwellings as a result of blasting operations in the construction of a sewer. The action was not predicated upon the negligence of anyone and all three defendants conceded liability to the plaintiffs for damage as a result of the blasting which was done by the subcontractor and indemnitor. The court, in the *Nielsen* case, determined that the language of the indemnity agreement was sufficiently broad to require the indemnitor to reimburse the indemnitee for the damages which were caused by the blasting. The risks associated with blasting, even where explosives are handled carefully, are matters of common knowledge. It is to be noted that the city, the contractor and the subcontractor all admitted liability to the landowner.

In the instant case now before this Court, the jury held the indemnitee liable to the plaintiffs and absolved the indemnitor from liability. Counsel for the appellant argues that this fact has no merit and should not affect the interpretation of the contract because there is no way to interpret the covenant of indemnity other than as an expression of intent to indemnify the indemnitee, even against the results of the indemnitee's own negligence and cites *Rice v. Pennsylvania R. Co.,* 202 F.2d 861 (2d Cir.) and *Union Pacific Railroad Company v. Ross Transfer Company,* 64 Wash. 2d 486, 392 P.2d 450.

In the *Rice* case, the indemnitor agreed to purchase from the United States scrap iron loaded upon a scow. The indemnitor agreed to hold the United States safe and harmless from any and all claims for injuries to persons or property occurring during the removal of the scrap. The scrap was in the possession of the United States and it had agreed to load it. The court held that the indemnitor was liable to the United States under the indemnity agreement for damages to railroad property occasioned by the government's employees. The court held that there was no reason for the indemnity agreement other than the reason that the indemnitor was indemnifying the government for the negligence of the government's own employees who were doing all the work.

In the *Union Pacific* case, the damages occurred as a result of the concurrent negligence of the indemnitee and the indemnitor, and the court held that language to the effect that the indemnitor would save the indemnitee harmless against any expenses caused or resulting in any manner from any acts or omissions, negligent or otherwise, of the indemnitor was sufficiently broad to hold the indemnitor liable to the indemnitee under their agreement.

*Chicago & N. W. R. Co. v. Chicago Packaged Fuel Co.,* 183 F.2d 630 (7th Cir. 1950), another case relied upon by the appellant, involved a situation in which the lower court granted a motion of the defendant to dismiss the complaint on the ground that it did not state a cause of action. The appellate court merely held in this case that inasmuch as substantial issues were presented by the complaint, the motion to dismiss should have been denied. The appellate court did not construe or interpret the provisions of the indemnifying agreement pleaded but reversed the judgment of the lower court and remanded the case for further proceedings.

In *Payne v. National Transit Co.,* 300 Fed. 411 (W.D. Pa.), a railroad company granted the defendant transit company the right to lay a pipe line under the railroad tracks, and the contract contained a covenant by the transit company to indemnify and save harmless the railroad company "from and against all claims, suits, damages, costs, losses, and expenses, in any manner resulting from or arising out of the laying, maintenance, renewal, repair, use, or existence of the said pipe * * * including the breaking of the same or the leaking of oil from the same." The pipe line broke and flooded the track and adjacent land with oil which caught fire from a switch engine, and a manufacturing plant adjoining the right-of-way was burned. A judgment for the loss was recovered by the manufacturing plant from the railway company, and the judgment was paid. The court held that the transit company was liable on its covenant of

indemnity although negligence of the railway company servants in operating the engine contributed to the loss.

Counsel for the appellant also relies on the case of *Eastern Gas and Fuel Associates v. Midwest-Raleigh, Inc.,* 374 F.2d 451 (4th Cir. 1967). The facts of the *Eastern* case disclose that Eastern, the owners of a coal mine, contracted with Midwest-Raleigh, Inc., for the sale, dismantling and removal of an old cleaning plant, a coal tipple, an aerial tram and coal hoist building. By the terms of the agreement Midwest was to furnish all labor, supervision, equipment, tools, etc., necessary to dismantle and remove the equipment and structures. Midwest agreed to "exercise extreme care in the performance of this work to prevent fire and/or other damage or accident * * *" and to "protect and indemnify Eastern against loss or damage to property and injury and death to persons resulting from, arising out of or incident to the performance of this contract." It was further agreed that Midwest would maintain bodily injury and property damage liability insurance to cover any liability arising from the performance of the contract.

Thereafter, with the approval of Eastern, Midwest employed Interstate Engineers and Constructors, Inc., as the subcontractor to perform the work required by the contract between Midwest and Eastern, and Interstate adopted the terms and conditions of that contract. An explosion occurred in the area of the coal mine where Interstate employees were working, killing two of them and injuring three others. The explosion apparently resulted from the accumulation of methane gas. A judgment was obtained against Eastern for the damages and subsequently paid by Eastern. Eastern then sought to be indemnified under the agreement with Midwest. The court held that the language of the indemnity contract was sufficiently clear and definite to hold the indemnitor liable under the provisions of the indemnity agreement. The court pointed out in its opinion that the work to be performed under the contract was potentially highly dangerous work. It is also to be noted that the language

of the indemnity agreement provided that Midwest would "protect and indemnify Eastern against loss or damage to property and injury and death to persons resulting from, arising out of or incident to the performance of this contract."

For reasons stated in this opinion, the judgment of the Circuit Court of Marion County is affirmed.

*Affirmed.*