432 S.E.2d 98

**Diana L. DALTON, Administratrix of the Estate of Thurman R. Dalton, Deceased, Plaintiff Below, Appellee**

**v.**

**CHILDRESS SERVICE CORP., a West Virginia Corporation, and Lo–Ming Coal Corporation, Defendants Below,**

**Lo–Ming Coal Corporation, Defendant Below, Appellant.**

**No. 21452.**

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1993.

Decided June 11, 1993.

Guy R. Bucci, Charleston, for appellee.

John M. Slack, III, Jackson & Kelly, Charleston, for Childress.

David M. Kersey, Jerry Cameron, Brewster, Morhous & Cameron, Bluefield, for Lo–Ming.

NEELY, Justice.

This is a wrongful death suit by the spouse of the late Thurman Dalton (plaintiff below, appellee) against his employer, Childress Service Corp. (defendant below) and Lo–Ming Coal Corp., appellant. Mr. Dalton was killed in an on-the-job accident while modifying part of a coal processing plant for Childress, his employer. Lo–Ming holds mining rights to tracts of coal property; Lo–Ming contracted with Childress to mine coal on Lo–Ming's land. As part of their contract (which was drafted by Childress), Childress agreed to indemnify Lo–Ming "against any and all liabilities ... arising out of or attributed directly to [Childress'] performance under this agreement." The circuit court held that despite the fact that *Childress* was held to be *73 percent negligent*, the indemnity agreement was void under *W. Va. Code* 55–8–14 [1975]. Appellant assigns error to that rul-

ing, as it is incorrect as a matter of law. We agree, and reverse the decision of the Circuit Court of Boone County.[1]

Mr. Dalton, an employee of Childress, was killed while he was moving a belt conveyor structure which transferred coal refuse out of the Childress-operated plant. Lo–Ming owned the mining rights to the land and hired Childress to perform the mining, but Lo–Ming did not direct Childress in the details of the mining work. Four Childress employees were detailed by Childress management to work on moving a belt conveyor structure. All four employees had extensive mining experience, and the operation was routine. Mr. Dalton was a mechanic/plant operator and the union safety committeeman for the plant. The belt conveyor weighed 5,000 pounds; the conveyor was attached to the plant at one end, and rested on two legs at the other end. The men took two slings and attached them to four points on the belt structure; they then hung the slings on the boom of the Childress-owned crane.

Then they began to remove the structure. The legs were first cut out from under the structure. Mr. Dalton and a co-worker climbed onto the building to sever the belt conveyor structure from the building. Mr. Dalton performed the final cuts himself. As the cuts were made, the belt structure dipped and pinned Mr. Dalton against the building, crushing him to death. The accident could have been prevented if the Childress employees had properly used a tag line, an extra line attached to the belt structure that would have steadied the conveyor after it was cut loose. The proper tag line technique was well-known to the four Childress employees and was a routine safety precaution.

Before trial, Childress and Mrs. Dalton settled for $500,000. The jury assigned 73 percent of the negligence to Childress; 17 percent of the negligence to Mr. Dalton, and only ten percent of the negligence to

Lo–Ming. As part of the settlement agreement, Ms. Dalton waived all rights to any further claims against Childress—including claims that would be covered by the indemnity clause in the Childress/Lo–Ming contract against Lo–Ming.[2]

The contract between Childress and Lo–Ming (a contract drafted by Childress) contains the following indemnity clause:

*Article VII: Indemnity*

7.1 Processor (Childress) agrees to indemnify and hold harmless Operator (Lo–Ming), and its subsidiaries and related companies, and the officers, directors and employees of such companies, against any and all liabilities, demands, losses, claims and damages of any kind, whether on account of injury to or death of any person or persons, damage to or loss of property, violation of law or regulation, or otherwise, arising out of or attributed, directly, to Processor's performance under this agreement, together with any and all cost and expenses including attorney's fees which may be incurred in connection therewith.

Furthermore, Lo–Ming required Childress to purchase adequate insurance before allowing work to begin: Under Article 10.1 of the contract, Lo–Ming required Childress to purchase liability and workers' compensation insurance before allowing Childress to begin work. Childress subscribed to workers' compensation and obtained a $1,000,000 general liability policy from The Travelers. The liability policy specifically extended coverage to cover all potential liability under the indemnity clause of the Lo–Ming/Childress contract.

In *Valloric v. Dravo Corp.*, 178 W.Va. 14, 357 S.E.2d 207 (1987), we held that a broad indemnity clause that specifically exempted the "sole negligence" of the indemnitee was valid and enforceable under *W.Va.Code* 55–8–14 [1975]. *Accord, Riggle v. Allied Chemical Corp.*, 180 W.Va.

---

1. Appellant also assigns as error the circuit court's denial of a motion for a judgment notwithstanding the jury verdict. We do not reach these issues, as the indemnity question is controlling.

2. Thus, we decline to discuss the validity of the plaintiff's claim against Lo–Ming under § 413 *Restatement of Torts* for the amount of the jury verdict in excess of the $500,000 settlement made by Childress to the plaintiff.

561, 378 S.E.2d 282 (1989). *W.Va.Code* 55–8–14 [1975] provides in part:

> A covenant, promise, agreement or understanding in or in connection with or collateral to a contract or agreement entered into on or after the effective date of this section [6 June 1975], relative to the construction, alteration, repair, addition to, subtraction from, improvement to or maintenance of any building, highway, road, railroad, water, sewer, electrical or gas distribution system, excavation or other structure, project, development or improvement attached to real estate, including moving and demolition in connection therewith, purporting to indemnify against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the *sole negligence of the indemnitee*, his agents or employees is against public policy and is void and unenforceable and no action shall be maintained thereon. [Emphasis added.]

■ Generally, indemnity clauses serve our goals of encouraging compromise and settlement by reducing settlement discussions to bilateral discussions, by *encouraging adequate levels of insurance*, and by allowing the parties to a contract to allocate among themselves the burden of defending claims. The indemnity agreement between Childress and Lo–Ming had the same beneficial effect as did the agreement in *Riggle*. In *Riggle*, we held that a similar indemnity agreement was:

> ... perfectly proper; its object was to allocate risks for insurance purposes. Persons employing contractors are cognizant of workers' compensation immunity and principles of joint and several liability. Without a contract provision like the one at issue in this case, a person contracting for work on his premises could be hit with an entire judgment for damages when a worker is injured, even though the owner of the premises was but one percent negligent. Although it is true that under the indemnity provision [the indemnitor] could be held responsible for all damages to a worker even though only one percent negligent, appellant was expected to buy adequate

insurance against this risk. Thus ... contractual allocations of risk similar to the one before us are favored; certainly they are not contrary to public policy.

*Riggle*, 180 W.Va. at 568, 378 S.E.2d at 289.

■ Although the agreement in *Riggle* contained the "magic words" excepting the "sole negligence" of the indemnitee, the reasoning about *a priori* allocations of joint and several liability and ensuring that adequate insurance coverage is obtained perfectly address the issue before us today: a just public policy demands that indemnity agreements be permitted unless they go beyond a mere allocation of potential joint and several liability and indemnify against the sole negligence of the indemnitee without an appropriate insurance fund, bought pursuant to the contract, for the express purpose of protecting all concerned. A contract that provides in substance that A shall purchase insurance to protect B against actions arising from B's sole negligence *does not* violate the statute as public policy encourages both the allocation of risks and the purchase of insurance.

■ It would be silly for us to hold a broad indemnity clause, even if it included the magic words "sole negligence," void on its face just because of the remote possibility that it *might* indemnify an indemnitee against his sole negligence under circumstances where there was not a properly purchased insurance fund under a valid clause allocating risks and requiring insurance coverage. A more rational interpretation of *W.Va.Code* 55–8–14 [1975] is that this section requires courts to void a broad indemnity agreement *only:* (1) if the indemnitee is found by the trier-of-fact to be solely (100 percent) negligent in causing the accident; and (2) it cannot be inferred from the contract that there was a proper agreement to purchase insurance for the benefit of all concerned. In this way, the harm that the Legislature wanted to guard against in *W.Va.Code* 55–8–14 [1975] can be prevented without undermining the valid liability and insurance concerns of people doing business in West Virginia.

■ Here Lo–Ming was not indemnified for their "sole negligence"; the jury found Lo–Ming to be only ten percent negligent. Therefore, the indemnity agreement requiring Childress to indemnify Lo–Ming in this situation does not violate the public policy contained in *W. Va. Code* 55–8–14 [1975] under even the most literal possible interpretation. However, the insurance provisions of this contract make it clear that the so-called "indemnity" clause is really only an agreement to purchase insurance, and thus would have protected Lo–Ming even if Lo–Ming had been found 100 percent negligent. Accordingly, the settlement between Ms. Dalton and Childress controls all potential liability of Lo–Ming and Lo–Ming should have been dismissed from the suit.

■ Furthermore, the indemnity clause provides for *"any and all* cost and expenses *including attorney's fees* which may be incurred in connection therewith." [Emphasis added.] This language covers both expenses incurred defending third-party claims as well as those incurred in making Childress perform under the agreement. As the Virginia Supreme Court held in a similar case:

> In our opinion, [the indemnitee] is entitled to recover its attorney's fees from [the indemnitor] pursuant to . . . their contract. We see no public policy limitation against this result as [the indemnitor] seems to suggest. We are committed to the view that parties may contract as they choose so long as what they agree to is not forbidden by law or against public policy. [The indemnitor] contracted to pay [the indemnitee] attorneys' fees in certain situations, and we think the present situation falls fairly within the terms of that agreement.

*Chesapeake & Potomac Tel. v. Sisson & Ryan*, 234 Va. 492, 362 S.E.2d 723, 729 (1987). If the indemnity contract language can be fairly read to indemnify for all related attorney expenses, then expenses incurred in successfully enforcing the agreement are covered by the indemnity clause. Here, Childress indemnified Lo–Ming against "any and all" attorneys expenses, so reimbursement for those is properly awarded to Lo–Ming.

For the foregoing reasons, the judgment of the Circuit Court of Boone County is reversed, and this case is remanded with directions to dismiss Lo–Ming from all further proceedings and to make an award of attorney fees.

Reversed and Remanded.