# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### January 2015 Term

**FILED**

**June 9, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0723

**ELK RUN COAL COMPANY, INC.
D/B/A REPUBLIC ENERGY,**
Defendant and Third-Party Plaintiff, Petitioner

**V.**

**CANOPIUS US INSURANCE, INC.
(F/K/A OMEGA US INSURANCE, INC.);
RSUI INDEMNITY COMPANY;
NATIONAL CASUALTY COMPANY; AND
SCOTTSDALE INSURANCE COMPANY,**
Third-Party Defendants, Respondents

---

**Appeal from the Circuit Court of Kanawha County
Honorable Charles E. King, Judge
Civil Action No. 11-C-1740
REVERSED, IN PART; AFFIRMED, IN PART; AND REMANDED**

---

**Submitted: April 22, 2015
Filed: June 9, 2015**

Jonathan L. Anderson                        Brent K. Kesner
Jackson Kelly PLLC                          Kesner & Kesner, PLLC
Charleston, West Virginia                   Charleston, West Virginia
Attorney for the Petitioner                 Attorney for Respondents
                                            Canopius US Insurance, Inc. and
                                            RSUI Indemnity Company

**Charles K. Gould**
**Jenkins Fenstermaker, PLLC**
**Huntington, West Virginia**
**Attorney for Respondents**
**National Casualty Company and**
**Scottsdale Insurance Company**

**JUSTICE DAVIS delivered the Opinion of the Court.**

**JUSTICE BENJAMIN, deeming himself disqualified, did not participate in the decision of this case.**

**SENIOR STATUS JUSTICE MCHUGH sitting by temporary assignment.**

**SYLLABUS BY THE COURT**

1.      "Language in an insurance policy should be given its plain, ordinary meaning."  Syllabus point 8, *Cherrington v. Erie Insurance Property & Casualty Co.*, 231 W. Va. 470, 745 S.E.2d 508 (2013) (internal quotations and citations omitted).

2.      "In a policy for commercial general liability insurance . . . when a party has an 'insured contract,' that party stands in the same shoes as the insured for coverage purposes."  Syllabus point 7, in part, *Consolidation Coal Co. v. Boston Old Colony Insurance Co.*, 203 W. Va. 385, 508 S.E.2d 102 (1998).

3.      "Contracts of indemnity against one's own negligence do not contravene public policy and are valid."  Syllabus Point 1, *Sellers v. Owens–Illinois Glass Co.*, 156 W. Va. 87, 191 S.E.2d 166 (1972).

4.      "Generally, contracts will not be construed to indemnify one against his own negligence, unless such intention is expressed in clear and definite language."  Syllabus point 3, *Sellers v. Owens–Illinois Glass Co.*, 156 W. Va. 87, 191 S.E.2d 166 (1972).

4.      "It is well settled law in West Virginia that ambiguous terms in

i

insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syllabus point 4, *National Mutual Insurance Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987)*, overruled on other grounds by Potesta v. United States Fidelity & Guarantee Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998).

**Davis, Justice:**

Petitioner, Elk Run Coal Co., Inc., d/b/a Republic Energy ("Elk Run"), defendant and third-party plaintiff below, appeals four separate orders entered by the Circuit Court of Kanawha County on May 28, 2014. The orders grant summary judgment in favor of four different insurance companies and deny Elk Run's motion for partial summary judgment against one insurer. Third-party complaints filed by Elk Run against the four insurers were dismissed with prejudice. Elk Run contends that the circuit court erred in concluding that none of the insurance policies provided coverage to Elk Run where a contract between Elk Run and the named insured under the policies, Medford Trucking, LLC ("Medford"),[1] was an insured contract. The four insurance companies filed timely responses arguing that the circuit court did not err in relying on certain policy provisions to determine there was no coverage. After a careful review of the briefs submitted by the parties, the record submitted for appeal, the oral arguments presented to this Court, and the applicable case law, we determine that the circuit court erred in granting summary judgment to two of the insurers. We therefore reverse, in part; affirm, in part; and remand this case for additional proceedings consistent with this opinion.

---

[1]Medford is not a party to this action.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

The facts leading to the instant dispute begin with a "Hauling and Delivery Agreement" ("H & D Agreement") between Elk Run and Medford whereby Medford would haul Elk Run's coal to various destinations designated by Elk Run.

On May 31, 2011, Medford truck driver Timothy Walker ("Mr. Walker") was sitting seat-belted in his parked coal truck while the truck was being loaded with coal by Elk Run employee Eric Scott Redden ("Mr. Redden"). Mr. Redden had directed Mr. Walker where to park the truck and had begun loading it with coal using a piece of equipment referred to as an "end-loader" or "front-end loader." During the course of loading the truck, Mr. Redden allegedly lost consciousness and struck the truck with the front-end loader thereby flipping the truck and causing injury to Mr. Walker. Elk Run and Mr. Redden have stipulated that they "will not argue or assert a comparative negligence defense against Plaintiff Timothy Walker at the trial of this matter." Similarly, there has been no allegation that Medford caused or contributed to the accident in any way.

Following the accident, Mr. Walker commenced a civil action against Elk Run and others on October 3, 2011.

The instant dispute involves the availability of insurance coverage to Elk Run in relation to the above-described accident. In this regard, the H & D Agreement between Elk Run and Medford contains a broadly worded "Indemnity; Insurance" clause, which states:

> 9.1 Except as otherwise expressly provided herein, Contractor [Medford] shall indemnify, defend and save harmless Owner [Elk Run], its members, parent companies, sister companies, predecessors, successors, affiliates, insurers, reinsurers, other contractors, successors and assigns, and the officers, directors, shareholders, employees and agents of each of the foregoing (collectively "Owner's Indemnified Persons") from and against any and all demands, actions, suits, claims, rights, losses (including, but not limited to, diminution in value), controversies, damages, costs, expenses (including, but not limited to, interest, fines, penalties, costs of preparation and investigation, and the reasonable fees and expenses of attorneys, accountants and other professional advisers), and any other liability of whatsoever kind or nature against Owner's Indemnified Persons (collectively, "Losses"), whether on account of damage or injury (including death) to persons or property, violation of law or regulation, or otherwise, *relating to, resulting from, arising out of, caused by or sustained in connection with, directly or indirectly*, Contractor's performance of the Work[2] or other activities performed pursuant to this Agreement (including work and activities performed by subcontractors) or Contractor's nonperformance or breach of the terms of this Agreement. . . .

---

[2] The H & D Agreement provided the following description of the term "work": "Contractor [Medford] shall, during the term of this Agreement, haul coal from Owner's [Elk Run's] premises to various locations set forth on Exhibit A. All of such services are sometimes hereinafter collectively referred to as the 'work.'"

(Emphasis and footnote added).[3]

In addition, pursuant to the "Indemnity; Insurance" clause of the H & D Agreement, Medford was required to purchase insurance:

> 9.3     Before commencing Work hereunder, Contractor [Medford] . . . shall obtain, and throughout the term of this Agreement maintain, at its sole expense, the following insurance coverages:
>
> . . . .
>
> (b)     Commercial General Liability Insurance with minimum limits of $2,000,000 for each occurrence and $2,000,000 general aggregate, for death, bodily injury and property damage, including coverage for independent contractors, products and completed operations, Blanket Broad Form Contractual, cross-liability, personal injury liability, Broad Form Property Damage, and where an exposure exists, coverage with the explosion, collapse and underground (XCU) hazard exclusions deleted from the policy.
>
> . . . .
>
> (d)     Automobile Liability Insurance, including owned, non-owned and hired vehicle coverage with limits of liability of not less than $2,000,000 combined single limits for death, bodily injury and property damage claims.

---

[3]The language quoted above from paragraph 9.1 of the "Indemnity; Insurance" clause appears in the fourth amendment to the H & D Agreement, which amendment was applicable at the time relevant to this action.

4

. . . .

> B. Except as to workers' compensation insurance, Owner [Elk Run] *shall be named as an additional insured*.

(Emphasis added).

In apparent accordance with the foregoing provisions, Medford purchased a commercial general liability ("CGL") policy from Canopius US Insurance, Inc., f/k/a Omega US Insurance, Inc. ("Canopius"), and a related commercial excess liability policy ("excess policy") from RSUI Indemnity Company ("RSUI"). Additionally, Medford purchased a commercial automobile liability policy, issued by National Casualty Company ("National"), and a related commercial automobile excess liability policy, issued by Scottsdale Insurance Company ("Scottsdale"). Each of these policies provided coverage in the amount of $1,000,000 per occurrence.

On November 1, 2011, Elk Run tendered a written demand for indemnification to Medford pursuant to the H & D Agreement, and asked Medford to place its insurance carriers on notice of Elk Run's demand. Medford's auto carrier, National, denied coverage based upon its conclusion that the claim did not result from "the ownership, maintenance or use of a covered auto as required under the insuring agreement." Medford's CGL carrier, Canopius, agreed to provide a defense to Elk Run subject to a reservation of rights to deny

5

coverage upon further investigation of the relevant facts. Ultimately, Canopius denied indemnity and any further defense to Elk Run based upon the conclusion that the injury and damages allegedly suffered by Mr. Walker were "not caused in whole or in part by Medford's acts or omissions or those of someone on its behalf, as is required for coverage under the . . . Blanket Additional Insured Endorsement."

On October 9, 2012, Mr. Walker filed an amended complaint naming Elk Run and Mr. Redden as defendants. Thereafter, Elk Run asserted a third-party complaint against Dr. Yasar J. Aksoy.[4] On May 16, 2013, Elk Run filed an amended third-party complaint adding as defendants Canopius, RSUI, National, and Scottsdale. Elk Run's complaint sought, in relevant part, a declaration that there was insurance coverage for Mr. Walker's claim against Elk Run under either the CGL policy issued to Medford by Canopius (with excess coverage by RSUI) or the automobile liability policy issued to Medford by National (with excess coverage by Scottsdale).

---

[4]Dr. Yasar J. Aksoy ("Dr. Aksoy") had been Mr. Redden's physician. Elk Run alleged that Dr. Aksoy had prescribed Mr. Redden opiate and benziodiazepine medications, and that Dr. Aksoy negligently provided Elk Run with written certification declaring Mr. Redden was medically stable to operate a front-end loader and perform other work-related duties while taking the prescribed opiate and benziodiazepine medications. Elk Run asserted that the certification provided by Dr. Aksoy deviated from the acceptable standard of care and caused an unjustifiable risk of harm to third parties. Dr. Aksoy is not a party to this appeal.

Meanwhile, Mr. Walker made a settlement demand on Elk Run. Elk Run forwarded the demand to Canopius, and Canopius responded that it would not make any offer in response. Elk Run eventually reached a settlement agreement with Mr. Walker, and his claims against Elk Run and Mr. Redden were dismissed. None of the insurers contributed to the settlement; therefore, Elk Run's third-party declaratory action against the insurers remained.

In January 2014, Elk Run moved for partial summary judgment against Canopius. On February 3, 2014, and February 11, 2014, respectively, Canopius and RSUI each filed a motion for summary judgment against Elk Run. On March 7, 2014, National and Scottsdale each filed a motion for summary judgment. On April 8, 2014, Elk Run filed a cross-motion for summary judgment against National.

On May 28, 2014, the circuit court entered four separate orders granting summary judgment in favor of Canopius, RSUI, National, and Scottsdale, and denying Elk Run's motion for partial summary judgment against Canopius.[5] Elk Run's third-party complaints against Canopius, RSUI, National, and Scottsdale were dismissed with prejudice. This appeal followed.

---

[5]The circuit court did not expressly deny Elk Run's motion for summary judgment against National. However, the circuit court's grant of summary judgment to National necessarily amounts to a denial of Elk Run's summary judgment motion.

## STANDARD OF REVIEW

We review *de novo* Elk Run's appeal of the circuit court's summary judgment orders. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). To the extent that the circuit court also denied summary judgment to Elk Run, we note that "[t]his Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." Syl. pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002). Our *de novo* review is guided by the principle that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

We additionally observe that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgment, shall be reviewed *de novo* on appeal." Syl. pt. 2, *Riffe v. Home Finders Assocs., Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999). It is also pertinent for us to note that the "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. pt. 1, *Tennant v.*

*Smallwood*, 211 W. Va. 703, 568 S.E.2d 10 (2002). With due regard for the forgoing standards, we consider the issues raised by Elk Run.

## III.

## DISCUSSION

Elk Run seeks coverage under four policies of insurance; however, two of the policies are for excess coverage. Coverage under the excess policies is, in part, dependent upon coverage under the primary policies. Therefore, it is necessary to first determine whether there is coverage under the primary policies. We begin with the CGL policy.

Elk Run asserts four errors by the circuit court in finding that Elk Run was not entitled to coverage under the Canopius CGL policy. We address them in turn. First, Elk Run contends that the H & D Agreement between Medford and Elk Run qualifies as an "insured contract." Accordingly, Elk Run stands in the shoes of Medford for coverage purposes.[6]

---

[6]This Court rejects Canopius' assertion that Elk Run has waived the issue of whether it qualifies as an "additional insured" under the Canopius CGL policy. This assertion is predicated upon the circuit court's determination in its order granting summary judgment to Canopius that Elk Run "concedes that it is not an insured under the Blanket Additional Insured Endorsement." While Elk Run has not expressly challenged this finding by the circuit court, its argument that it "stands in the same shoes" as Medford pursuant to Syllabus point 7 of *Consolidation Coal Co. v. Boston Old Colony Insurance Co.*, 203 W. Va. 385, 508 S.E.2d 102 (1998), is tantamount to asserting that it is an additional insured under

(continued...)

9

The Canopius CGL policy defines an "insured contract" in relevant part as:

> 9.f.   That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Language in an insurance policy should be given its plain, ordinary meaning." Syl. pt. 8, *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 231 W. Va. 470, 745 S.E.2d 508 (2013) (internal quotations and citations omitted). Applying the plain language above, it is clear that, insofar as the indemnity agreement between Elk Run and Medford was part of their H & D Agreement and required Medford to "assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization," it is an "insured contract" under the policy.[7] Because the contract between Elk Run and Medford is an

---

[6](...continued)
the policy. Furthermore, significant evidence in the record demonstrates that Elk Run is an additional insured. First, Section 9.3 of the H & D Agreement expressly required that "Owner [Elk Run] shall be named as an additional insured." Second, a "Certificate of Liability Insurance" in the record contains a statement that "Certificate Holder is an Additional Insured on the referenced policies." The certificate references both the Canopius CGL policy and the RSUI excess policy, and identifies Elk Run as the certificate holder. Finally, a claim adjustor/third party administrator for Canopius states, in relevant part, in a letter dated February 8, 2012, that Canopius "confirms that Elk Run . . . qualifies as an Additional Insured on the Policy." Therefore, we interpret Elk Run's argument to be that it is an additional insured under the Canopius CGL policy and will develop our analysis accordingly.

[7]With regard to this type of language in an insurance policy, this Court has clarified that

> [t]he phrase "liability assumed by the insured under any

(continued...)

10

insured contract,[8] we observe this Court's prior holding that, "[i]n a policy for commercial general liability insurance . . . when a party has an 'insured contract,' that party stands in the same shoes as the insured for coverage purposes." Syl. pt. 7, in part, *Consolidation Coal Co. v. Boston Old Colony Ins. Co.*, 203 W. Va. 385, 508 S.E.2d 102 (1998). Based upon this holding, we conclude that Elk Run "stands in the same shoes as [Medford] for coverage purposes" and is, therefore, an additional insured.

Canopius argues that there is no coverage for Elk Run's sole negligence pursuant to the "Blanket Additional Insured Endorsement," which provides, in relevant part, that

> [t]he insurance provided to these additional insureds is limited as follows:
>
> 1.     That person or organization is an additional insured *only with respect to* liability for "bodily injury", "property damage" or "personal and advertising injury" *caused, in whole or in part, by*:
>
>        a.     *Your acts or omissions*; or

---

[7](...continued)
contract" in an insurance policy, or words to that effect, refers to liability incurred when an insured promises to indemnify or hold harmless another party, and thereby agrees to assume that other party's tort liability.

Syl. pt. 5, *Marlin v. Wetzel Cnty. Bd. of Educ.*, 212 W. Va. 215, 569 S.E.2d 462 (2002).

[8]The CGL policy contains an exclusion of contractual liability, but expressly states that the exclusion does not apply to an "insured contract."

11

b.     *The acts or omissions of those*
*acting on your behalf.*

(Emphasis added).  To the extent that "your" refers to Medford as the named insured,

subsection (a) does not apply insofar as the underlying liability does not result from any act

or omission by Medford.  However, the circuit court also concluded that subsection (b) does

not apply based upon its conclusion that Elk Run was not "acting on [Medford's] behalf" in

loading coal onto Medford's truck.  We disagree.


A case similar to the instant matter is *Norfolk Southern Railway Co. v. National*

*Union Fire Insurance of Pittsburgh, PA,* 999 F. Supp. 2d 906 (S.D.W. Va. 2014).  The facts

of *Norfolk Southern* are that employees of Norfolk Southern Railway Company ("Norfolk

Southern") and Cobra Natural Resources, LLC ("Cobra") were "positioning a train under a

coal loading facility."  *Id.* at 909.  During this process, a rail broke causing several cars to

derail.  One car struck the coal loading facility causing it to collapse.  Several lawsuits were

subsequently filed against Norfolk Southern.  Cobra did not cause the derailment.  An

agreement between Norfolk Southern and Cobra required Cobra to maintain insurance under

which Norfolk Southern was an additional insured.  The policy obtained by Cobra provided

coverage for additional insureds "only with respect to liability arising out of 'Your Work',

'Your Product' and to property owned or used by you." *Id*. at 912 (internal quotations

12

omitted).[9]  The district court observed that "[t]he policy defines 'Your Work,' in relevant part, as '(1) work or operations performed by you or *on your behalf*; and (2) materials, parts or equipment furnished in connection with such work or operations.'" *Id.* (emphasis added). The court concluded that the policy provided coverage for Norfolk Southern, the additional insured, because the derailment "arose out of" Cobra's "work" as defined in the policy. *Id.* at 914. *See also Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1264 (11th Cir. 2007) (finding coverage for indemnity obligation triggered by accident arising out of indemnitor's work because the work placed indemnitor's employees in the path of accident caused by indemnitee's negligence); *Perkins v. Rubicon, Inc.*, 563 So. 2d 258, 259 (La. 1990) (finding indemnity provision requiring injury "arising out of" indemnitor's performance of work required "connexity similar to that required for determining cause-in-fact," and concluding that injury triggered indemnification because injured employee would not have been present to be injured "but for performance of the work under the contract").

Similarly, we find coverage for Elk Run under the Canopius policy provision qualifying Elk Run as "an additional insured only with respect to liability . . . caused, in whole or in part, by: . . . [the] acts or omissions of those acting on your [Medford's] behalf." The underlying injury in this case occurred while an Elk Run employee was loading coal onto

---

[9]The *Norfolk Southern* court observed that "Cobra is the named insured on the Westchester policy, so 'you' refers to Cobra." *Norfolk S. Ry. Co. v. National Union Fire Ins. of Pittsburgh, PA*, 999 F. Supp. 2d 906, 912 (S.D.W. Va. 2014).

a Medford truck. In loading the coal onto the Medford truck, Elk Run was acting on Medford's behalf. First, the H & D Agreement originally acknowledged that Elk Run "shall supply a loader with operator to *assist Contractor* [*Medford*] in the performance of the Work." The circuit court rejected this clause as evidence that Elk Run's activities were on behalf of Medford because this provision was omitted by an amendment to the H & D Agreement that became effective prior to the incident underlying this claim. To the contrary, however, we find the fact that Elk Run was no longer contractually obligated to supply a loader with operator to assist Medford does not diminish the fact that Elk Run, nevertheless, continued to provide this assistance and, in doing so, was acting on Medford's behalf.

Elk Run next contends that the circuit court erred by finding that the public policy of the State of West Virginia does not permit one to obtain indemnification for one's own conduct. The circuit court relied on W. Va. Code § 55-8-14 (1975) (Repl Vol. 2008) as a general source for this asserted public policy. The circuit court's reliance on W. Va. Code § 55-8-14 is misplaced. That statute expressly applies only to certain types of contracts not at issue in this case; therefore it does not provide a basis for a public policy against all contracts indemnifying one for his or her own conduct. Assuming, *arguendo*, that W. Va. Code § 55-8-14 did apply, it does not prohibit indemnity contracts for the sole negligence of the indemnitee where the contract includes an agreement to purchase insurance:

> W. Va. Code § 55–8–14 requires courts to void a broad indemnity agreement *only*: (1) if the indemnitee is found by the

14

trier-of-fact to be solely (100 percent) negligent in causing the accident; *and* (2) it cannot be inferred from the contract that there was a proper agreement to purchase insurance for the benefit of all concerned.

Syl. pt. 2, *Dalton v. Childress Serv. Corp.*, 189 W. Va. 428, 432 S.E.2d 98 (1993) (emphasis added); *see also Id.*, at 431, 432 S.E.2d at 101 ("[A] just public policy demands that indemnity agreements be permitted unless they go beyond a mere allocation of potential joint and several liability and indemnify against the sole negligence of the indemnitee *without an appropriate insurance fund*, bought pursuant to the contract, for the express purpose of protecting all concerned. A contract that provides in substance that A shall purchase insurance to protect B against actions arising from B's sole negligence does not violate the statute as public policy encourages both the allocation of risks and the purchase of insurance." (emphasis added)). The H & D Agreement between Elk Run and Medford clearly included an agreement to purchase insurance for the benefit of all concerned; therefore, even under *Dalton*, the agreement is not void and unenforceable. Finally, the circuit court's conclusion is contrary to this Court's precedent. Indeed, this Court has expressly declared that "[c]ontracts of indemnity against one's own negligence do not contravene public policy and are valid." Syl. pt. 1, *Sellers v. Owens–Illinois Glass Co.*, 156 W. Va. 87, 191 S.E.2d 166 (1972). *Accord* Syl. pt. 3, *Riggle v. Allied Chem. Corp.*, 180 W. Va. 561, 378 S.E.2d 282 (1989); Syl. pt. 4, *State ex rel. Vapor Corp. v. Narick*, 173 W. Va. 770, 320 S.E.2d 345 (1984). Consequently, we find the circuit court erred in concluding that the H & D Agreement violated the public policy of this State.

Elk Run next asserts that the circuit court erred in finding the language of the H & D Agreement was not sufficiently clear to express that Medford had agreed to indemnify Elk Run for accidents arising from Elk Run's sole negligence. This Court, in *Sellers v. Owens–Illinois Glass Co.*, 156 W. Va. 87, 191 S.E.2d 166, held that, "[g]enerally, contracts will not be construed to indemnify one against his own negligence, unless such intention is expressed in clear and definite language." Syl. pt. 3, *id.* The indemnifying clause at issue in *Sellers* provided that "'Subcontractor shall indemnify Contractor against all claims for damages arising from accidents to persons or property occasioned by the Subcontractor, his agents or employees.'" *Id.* 94, 191 S.E.2d at 170. The Court found "[t]he language of the indemnity agreement is not sufficiently clear and definite to require [subcontractor] to indemnify the [contractor], for its sole negligence." *Id.* Unlike the agreement in *Sellers*, the instant agreement was not limited to damages "occasioned by" the indemnitor. Rather, the H & D Agreement required Medford to obtain insurance to broadly indemnify Elk Run for losses "*relating to, resulting from, arising out of, caused by or sustained in connection with, directly or indirectly*, [Medford's] performance of the Work."[10] The indemnity clause in the Elk Run/Medford agreement is more broad than a clause found to be sufficiently clear in the

---

[10]Terms such as "relating to" and "in connection with" have been afforded exceptionally broad meaning by this Court. *See, e.g.*, *Caperton v. A.T. Massey Coal Co.*, 225 W. Va. 128, 147, 690 S.E.2d 322, 341 (2009) (concluding that the phrase "in connection with" means that one thing must "bear a logical relationship" to another); *Contractors Ass'n of W. Virginia v. West Virginia Dep't of Pub. Safety, Div. of Pub. Safety*, 189 W. Va. 685, 697, 434 S.E.2d 357, 369 (1993) ("The ordinary meaning of 'relating to' is that there is a connection between two subjects, not that the subjects have to be the same.").

case of *Eastern Gas & Fuel Associates v. Midwest-Raleigh, Inc*., 374 F.2d 451 (4th Cir. 1967), which is discussed in *Sellers*. The *Eastern Gas* court considered an indemnity agreement requiring the indemnitor to "'protect and indemnify Eastern against loss or damage to property and injury and death to persons resulting from, *arising out of or incident to* the performance of this contract.'" *Id.*, 374 F.2d at 452. Also pursuant to the agreement, "Midwest would maintain bodily injury and property damage liability insurance to cover any liability arising from the performance of the contract." *Id.* Following an explosion that killed two workers, a judgment was obtained against Eastern for the damages. Eastern then sought indemnification in accordance with its agreement with Midwest. The court held that the "the contract is 'clear and definite' in its indemnity of Eastern against all liability arising from performance of the contract, despite its own negligence." *Id.*, 374 F.2d at 454. Likewise, we find the broad language used in the H & D Agreement, which includes losses relating to or in connection with Medford's work, either directly or indirectly, is sufficiently clear and definite to express that Medford agreed to indemnify Elk Run for Elk Run's sole negligence so long as that negligence bore some relation, either directly or indirectly, to Medford's work. The circuit court erred in finding otherwise.

Elk Run's final argument related to the CGL policy is that the circuit court erred in finding the auto exclusion in the Canopius policy applicable. The Canopius policy contains an exclusion for "'[b]odily injury' or 'property damage' arising out of the

17

ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by . . . any insured."  The Medford truck in which Mr. Walker was sitting at the time of his injury qualifies as an "auto" under the Canopius policy.[11]  The question, then, is whether the loss was caused by the "use" of the auto.  Pursuant to the policy, "[u]se includes operation and 'loading or unloading.'"[12]  Significantly, however, the definition of the term "loading or

---

[11]The policy defines "Auto" as

a.     A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b.     Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment."

[12]The policy provides the following definition of "loading and unloading":

11.     "Loading or unloading" means the handling of property:

a.     After it is moved from the place where it is accepted for movement into or onto an . . . "auto";

b.     While it is in or on an . . . "auto"; or

c.     While it is being moved from an . . . "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the . . . "auto".

18

unloading" contained in the policy clarifies that the term "*does not include* the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the . . . 'auto.'" (Emphasis added). Given this definition of "loading or unloading," we must determine whether the front-end loader used to load coal onto the Medford truck is a "mechanical device."

The Canopius policy fails to define the term "mechanical device." As Elk Run notes, courts have concluded that a "front-end loader" is a "mechanical device." *See Palp, Inc. v. Williamsburg Nat'l Ins. Co.*, 200 Cal. App. 4th 282, 292, 132 Cal. Rptr. 3d 592, 600 (2011) (referring to a front-end loader as a mechanical device); *Cobb Cnty. v. Hunt*, 166 Ga. App. 409, 410, 304 S.E.2d 403, 405 (1983) (referring to a front-end loader as a mechanical device); *Lafata v. Village of Lisle*, 185 Ill. App. 3d 203, 207, 541 N.E.2d 210, 213 (1989) (finding that front-end loader was a mechanical contrivance or device), *aff'd*, 137 Ill. 2d 347, 561 N.E.2d 38 (1990). "It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. pt. 4, *National Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987)*, overruled on other grounds by Potesta v. United States Fid. & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998). Thus, given the authorities for concluding that a "front-end loader" is a "mechanical device," we will treat it as such for purposes of the Canopius policy.

19

Because "'loading or unloading' does not include the movement of property by means of a mechanical device other than a hand truck," and because the coal was being loaded onto Medford's truck using a mechanical device, the loading of the coal was not a "use" of an automobile as excluded by the policy. Accordingly, the circuit court erred in applying the auto exclusion of the Canopius policy as a grounds for finding coverage was not available to Elk Run.[13]

Based upon our reasoning above, we conclude that the circuit court erred in granting summary judgment to Canopius based upon the circuit court's erroneous finding that Elk Run was not entitled to coverage under the Canopius policy. We therefore reverse the circuit court's grant of summary judgment to Canopius. Because we additionally have found coverage for Elk Run under the terms of the Canopius policy, we likewise reverse the circuit court's denial of Elk Run's motion for partial summary judgment. We remand this case for proceedings consistent with this opinion, including the entry of an order granting partial

[13]Elk run additionally argues, in the alternative, that if this Court finds the CGL policy does not provide coverage due to the auto exclusion, then the commercial automobile policy issued by National Casualty must provide coverage insofar as the CGL and commercial automobile policies are designed to provide seamless, non-overlapping coverage. Because we find the circuit court erred by finding no coverage under the Canopius CGL policy, we affirm, without discussion, the circuit court's grant of summary judgment to the commercial automobile insurer, National. In addition, because the excess policy issued by Scottsdale follows the terms, conditions, exclusions, definitions, and endorsements of the commercial automobile policy issued by National, we likewise affirm the circuit court's grant of summary judgment to Scottsdale.

summary judgment to Elk Run on the issue of coverage under the Canopius policy.

We next consider the excess policy issued by RSUI that is related to the Canopius policy. The circuit court gave two grounds for granting summary judgment to RSUI. First, the circuit court found that the RSUI excess policy does not apply to any occurrence for which the underlying insurance does not apply. Because we find coverage under the Canopius policy, this portion of the circuit court's ruling is erroneous. In addition, the circuit court found that the RSUI policy contains an exclusion that precludes coverage for Mr. Walker's claim against Elk Run independent of the Canopius policy. This "Employers Liability Exclusion Endorsement" provides, in relevant part, that the RSUI policy "does not apply to bodily injury . . . to: . . . [a]n employee of the insured arising out of and in the course of employment by the insured." The provision goes on to provide that "[t]his exclusion applies: . . . [w]hether the insured may be liable as an employer or in any other capacity; and [t]o any obligation to share damages with or repay someone else who must pay damages because of the injury." We conclude that this exclusion does not preclude coverage for Elk Run in the instant matter.

RSUI concedes that its policy is a following form policy. RSUI explains that such a policy incorporates the same terms as the Canopius Policy, unless the RSUI policy

21

specifies otherwise.[14] Notably, the RSUI policy contains no provisions addressing insured contracts. Therefore, the insured contract provisions of the Canopius policy apply. We determined above, in relation to the Canopius policy, that because this action involves an insured contract, Elk Run steps into the shoes of Medford for coverage purposes. *See* Syl. pt. 7, *Consolidation Coal Co. v. Boston Old Colony Ins. Co.*, 203 W. Va. 385, 508 S.E.2d 102 ("In a policy for commercial general liability insurance . . . when a party has an 'insured contract,' that party stands in the same shoes as the insured for coverage purposes."). Thus, Elk Run is an additional insured under the RSUI policy, just as it is under the Canopius policy. Looking at the plain language of the RSUI exception from the perspective of Elk Run as an insured thereunder, it becomes apparent that the exclusion does not apply. Elk Run is neither seeking coverage for an injury to its own employee, nor seeking to repay someone else who must pay damages because of the injury. Accordingly, the circuit court erred in granting summary judgment to RSUI and we reverse the same.

---

[14]In this regard, the policy, itself, expressly provides that "[t]his insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the 'Underlying Insurance.'" The policy then sets out two exceptions to this statement; one for claims settled without RSUI's consent, and the other for provisions that are contrary to provisions contained in the RSUI policy.

## IV.

## CONCLUSION

For the reasons stated in the body of this memorandum decision, we reverse the May 28, 2014, order of the circuit court of Kanawha County granting summary judgment to Canopius and denying Elk Run's motion for partial summary judgment. Likewise, the circuit court's order of May 28, 2014, granting summary judgement to RSUI is reversed. We remand this case with instructions to the circuit court to enter an order granting partial summary judgment to Elk Run on the issue of coverage under the Canopius policy, and for further proceedings consistent with this memorandum decision. The two orders granting summary judgment to National and Scottsdale, also entered on May 28, 2014, are affirmed.[15]

Reversed, in part; Affirmed, in part; and Remanded.

---

[15]*See supra* note 13.